582 A.2d 1380

**William SEATON, Appellant,**

**v.**

**EAST WINDSOR SPEEDWAY, INC., Joseph Scarmadella, Lindy Vicari, Ken Brightbill, David Sharman, and John Does.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 1990.

Filed Dec. 7, 1990.

Kevin J. Kelleher, Bethlehem, for appellant.

Gail L. O'Neal, Harrisburg, for East Windsor & Vicari, appellees.

Bernard R. Gerber, Reading, for Brightbill, appellee.

David M. Kozloff, Wyomissing, for Sharman & Does, appellees.

Before ROWLEY, BECK and BROSKY, JJ.

ROWLEY, Judge:

On June 27, 1980, appellant, William Seaton, a member of the pit crew for race car driver David Kelley, was injured when a race car driven by Ken Brightbill crashed into a guardrail. Prior to entering the pit, appellant had signed a Release and Waiver of Liability and Indemnity Agreement ("Release").[1] Appellant commenced a civil action against

1. "RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT

IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area, and all walkways, concessions and other areas appurtenant to an area where any activity related to the event shall take place), or being permitted to compete, officiate, observe, work for, or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin, acknowledges, agrees and represents that he has, or will immediately upon entering any of such restricted areas, and will continuously thereafter, inspect such restricted areas and all portions thereof which he enters and with which he comes in contact, and he does further warrant that his entry upon such restricted area or areas and his participation, if any, in the event constitutes an acknowledgement that he has inspected such restricted area and that he finds and accepts the same as being safe and reasonably suited for the purposes of his use, and he further agrees and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the restricted areas:

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVE-NANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the event and each of them, their

East Windsor Speedway, Inc., the corporation owning the racetrack; Joseph Scarmadella, a promoter of the East Windsor Raceway; Lindy Vicari;[2] David Sharman, the owner of the car that crashed; Ken Brightbill, the driver of the car that crashed; and various John Does, seeking damages for personal injuries he suffered as a result of the

officers and employees, all for the purposes herein referred to as "releasees", from all liability to the undersigned, his personal representatives, assigns, heirs and next of kin for any and all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event;

2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area or in any way competing, officiating, observing, or working for, or for any purpose participating in the event and whether caused by the negligence of the releasees or otherwise.

3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the event.

EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made."

**2.** In his complaint, appellant alleged that Vicari was the "owner, operator, promoter, lessor, lessee, and/or agent of the Defendant, East Windsor Speedway, Inc." (Appellant's complaint, at 2). In his answer, new matter and crossclaim, Vicari denied that he had been the "owner, operator, promoter, lessor, lessee, and/or agent of the defendant, East Windsor Speedway, Inc." and claimed that he had "acted only as a President and employee of Racing Sanctioning Corporation of America." Whether or not Vicari had been a promoter was a matter of dispute in appellant's and Vicari's depositions.

crash. Appellee, Lindy Vicari, filed an answer containing new matter and alleged that the Release which appellant had signed released Vicari of all liability. Appellant replied to the new matter claiming that he had not read the release nor understood what he was signing. Vicari filed a motion for summary judgment, arguing that appellant could not, as a matter of law, establish a *prima facie* case against Vicari. The trial court granted summary judgment in favor of Vicari, and appellant filed the instant appeal.

 Upon review of an order granting a motion for summary judgment, we view the evidence and all inferences reasonably drawn therefrom in a light most favorable to the non-moving party. *Hower v. Whitmak Assoc.*, 371 Pa.Super. 443, 445, 538 A.2d 524, 525 (1988), *alloc. denied,* 522 Pa. 584, 585, 559 A.2d 527, 528 (1989). A trial court's order granting summary judgment will not be reversed unless the trial court has committed an error of law or a clear abuse of discretion. *Ackler v. Raymark Indus., Inc.*, 380 Pa.Super. 183, 185, 551 A.2d 291, 292 (1988). In the instant case, appellant alleges that the trial court abused its discretion and committed an error of law in granting the motion for summary judgment, because a genuine issue remains as to a material fact. Having carefully reviewed the record and considered the arguments of counsel, we affirm.

Appellant argues that granting the motion for summary judgment was improper because whether he knowingly and voluntarily signed the release is a question of fact for the jury. Appellant further contends that the release violates public policy and therefore is ineffective and unenforceable. We address this latter argument first.

 Appellant's argument, that the Release violates public policy, is without merit. Contracts against liability, although not favored by courts, violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals. *Leidy v.*

*Deseret Enterprises, Inc.*, 252 Pa.Super. 162, 167–68, 381 A.2d 164, 167 (1977) (citations omitted). The Release in the instant case involves not a matter of public interest but, rather, a private agreement between individuals. Moreover, courts of this Commonwealth have upheld releases similar to the one signed by appellant as not violating this Commonwealth's public policy.

> An agreement exculpating the sponsor of the race and the owner of the track does not contravene public policy. It is a contract between individuals pertaining to their private affairs and does not impair generally the rights of members of the public.

*Valeo v. Pocono Intern. Raceway, Inc.*, 347 Pa.Super. 230, 500 A.2d 492 (1985). *See also, Talbert v. Lincoln Speedway*, 33 Pa.D. & C. 3d 111 (1984); *Grbac v. Reading Fair Co., Inc.*, 521 F.Supp. 1351, 1355 (W.D.Pa.1981), *aff'd*, 688 F.2d 215 (3d Cir.1982). The Release in the instant case does not violate public policy.

 Appellant also contends that whether he knowingly and voluntarily signed the release is a question of fact for the jury. This contention is likewise without merit. Appellant signed the release voluntarily. He was not compelled to sign it, but rather chose to sign it in order to go into the pit. He did not depend upon working at the racetrack for his livelihood. In fact, he worked full-time at Coplay Cement. (Appellant's Deposition, 5/8/89 at 7).

Appellant also knowingly signed the release.[3] Appellant admits that he signed the Release.

> "I signed this. I don't know what they had up here, though. I never read that, never did. All the years I've been going to the races, I never read that."

---

**3.** Appellant was not a novice at attending races. Appellant's deposition clearly indicates that appellant had worked in the pit for eight years prior to the accident (Appellant's Deposition, 5/8/89 at 30), had witnessed many accidents including five "real bad ones" (Appellant's Deposition, 5/8/89 at 40), and had seen both cars (Appellant's Deposition, 5/8/89 at 40) and parts of cars (Appellant's Deposition, 5/8/89 at 41) leave the track. Appellant testified that accidents occurred nearly every time a heat race was run (Appellant's Deposition, 5/8/89 at 44) and every third or fourth feature (Appellant's Deposition, 5/8/89 at 44).

(Appellant's Deposition, 5/8/89 at 46). Appellant further testified that he had signed similar pieces of paper without reading them at every race where he worked in the pit. (Appellant's Deposition 5/8/89 at 47). Appellant contends, however, that he was not told he was signing a release, but rather believed he was signing a sign up sheet to get into the pit.

> In the absence of fraud or a relation of trust and confidence between the parties, a releasor can ordinarily not avoid the effect of a release upon the ground that at the time he signed the paper he did not read it or know its contents, but relied on what another said about it.

66 Am.Jur.2d *Release* § 15 (1973). Further, the bold-typed letters "Release and Waiver of Liability and Indemnity Agreement" at the top of the sheet quickly notify the signer that the paper is, in fact, a release.

■ Appellant also argues that, due to the long line of people behind him, he did not have time to read the Release. "His explanation that he did not read it does not, in the absence of fraud or a confidential relationship, extricate him from its operation." *Talbert,* at 114. *See also,* 66 Am.Jur.2d *Release* § 15 (1973); *Ackler v. Raymark Indus., Inc.,* 380 Pa.Super. 183, 190, 551 A.2d 291, 294–95 (1988); *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Appellant, unlike the plaintiff in *Talbert,* makes no allegation that the Release was folded or otherwise hidden so as to constitute fraud.

Relying on *Zimmer v. Mitchell and Ness,* 253 Pa.Super. 474, 478, 385 A.2d 437, 439 (1978) (exculpatory agreements are valid if they do not violate public policy, are between individuals and relate to their private affairs, and each party is a free bargaining agent), *aff'd.,* 490 Pa. 428, 416 A.2d 1010 (1980), the trial court correctly concluded that the Release in the instant case was executed voluntarily and was valid and binding on appellant. Since appellant was bound by the terms of the Release, the trial court properly granted summary judgment in favor of Lindy Vicari.

Summary judgment affirmed.