## Pennington v. Lombardi-Martelli

C.P. of Bucks County, no. 97-000538-20-2.

*J. Davy Yockey,* for plaintiffs.

*Gerald X. Smith,* for defendant Donna Lombardi-Martelli d/b/a D.L.M. Equestrian School.

*Charles Stokes,* for defendant Ellen Schmidt.

McANDREWS, *J.,* August 3, 1999—This opinion is written in support of this court's order of July 29, 1999 granting defendant Donna Lombardi-Martelli, individually and d/b/a D.L.M. Equestrian School Inc.'s motion for summary judgment.

Plaintiff Robyn Pennington filed a complaint on January 22, 1997 seeking compensation for injuries arising out of defendants' negligence. Defendant D.L.M. Equestrian School Inc. filed for summary judgment on April 26, 1999 after the close of all relevant pleadings and discovery.

Plaintiff's complaint alleges she suffered injuries upon being bitten by a horse while a patron of D.L.M. In July of 1994, plaintiff and her daughters contracted with D.L.M. to board their horse and to take riding lessons. In exchange for reduced boarding fees of her horse "Bob," plaintiff agreed to perform various work for defendant Donna Lombardi-Martelli who owned and operated D.L.M. As a condition to the agreement to provide riding lessons at the school, a document was presented to plaintiff for her signature. The document purports to be a general release absolving the defendant school from liability in the event plaintiff suffered injuries. Plaintiff signed the document on July 1, 1994.

On January 26, 1995, plaintiff was riding Bob at the school and was bitten on the leg by another horse named Winston. The horse Winston is owned by co-defendant Ellen Schmidt and was ridden by a minor. As part of Schmidt's boarding arrangements, the school used the horse for riding instructions.

Defendant D.L.M.'s motion for summary judgment contends the document signed by plaintiff on July 1, 1994 was a complete release from liability, and, therefore, there is no material fact in issue.

Under Pa.R.C.P. 1035.2, summary judgment is proper where there is no material fact in issue or where the non-moving party has failed to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101, 674 A.2d 1038, 1042 (1996).

First, there is a question whether the document signed is a valid release. A release is essentially a type of con-

tract. See Restatement (Second) of Contracts §503. It is well-established that a contact is enforceable when the parties reach mutual agreement, exchange consideration and have outlined the terms of their bargain with sufficient clarity. An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy. If an essential term is left out of the agreement, the law will not invalidate the contract. *Greene v. Oliver Realty Inc.,* 363 Pa. Super. 534, 539, 526 A.2d 1192, 1194 (1987).

Plaintiff contends that the release is invalid because: (1) it is a contract of adhesion; (2) the release is incomplete and ambiguous on its face; and (3) the release does not absolve defendant of liability for defendant's own negligence.

Plaintiff's first argument is that the release is defective, because it does not identify a specific "rider." Plaintiff argues that it could be applicable to either the mother, Robyn Pennington, or her daughters who also took lessons at D.L.M. An examination of the document indicates Robyn Pennington has signed the release underneath the statement "I have read and understand this release" on the line marked "Rider's signature." There is a separate line marked "Rider's parent or guardian if rider is a minor." This line contains no signature. The signature clearly evidences Robyn Pennington's intent to be bound individually, rather than her signing as a guardian. The suggestion that the release was intended to apply to the daughters only is without merit.

Paragraph 9 also has a blank leaving open the state law that should apply. Since plaintiff both resides in and

the business operates in Pennsylvania, it could be presumed that Pennsylvania law applies to and was intended to apply to this release.

The plaintiff's next argument is whether the exculpatory clause is invalid because it is a contract of adhesion.

The general rule is that exculpatory clauses are valid where the contract does not "contravene any policy of the law. It must be a contract between individuals relating to their private affairs. Each party must be a free bargaining agent, not simply one drawn into an adhesion contract, with no recourse but to reject the entire transaction." *Zimmer v. Mitchell and Ness,* 253 Pa. Super. 474, 478, 385 A.2d 437, 439 (1978); *Kotovsky v. Ski Liberty Operating Corp.,* 412 Pa. Super. 442, 447, 603 A.2d 663, 664 (1992).

Plaintiff contends that the release is a contract of adhesion. Plaintiff notes that, according to defendant Martelli's testimony, all prospective riders were required to sign a release or they could not participate in riding activities. Defendant testified that it was a standard form used and that if patrons choose not to sign it, "they don't come and take lessons and they don't board." Therefore, it is argued that plaintiff had no choice but to sign the release if she wanted riding lessons.

Defendant, in opposition, contends that such contracts are not contracts of adhesion; "each party is free to participate or not participate." See *Valeo v. Pocono International Raceway Inc.,* 347 Pa. Super. 230, 500 A.2d 492 (1985). Plaintiff was free to board her horse elsewhere and take lessons elsewhere. In *Seaton v. East Windsor Speedway Inc.,* 400 Pa. Super. 134, 139, 582 A.2d 1380, 1383 (1990), the court noted that "[h]e was not com-

pelled to sign it [the release], but rather chose to sign it in order to go into the pit. He did not depend upon working at the racetrack for his livelihood. In fact, he worked full-time at Coplay Cement." In this case, the plaintiff was not compelled to sign the release, since she was free to select another school without such requirements. The court, therefore, finds this argument unpersuasive.

Additionally, the claims that plaintiff did not read the release will not invalidate the release. See *Seaton v. East Windsor Speedway Inc.,* 400 Pa. Super. 134, 140, 582 A.2d 1380, 1383 (1990) ("a releasor can ordinarily not avoid the effect of a release upon the ground that at the time he signed the paper he did not read it or know its contents, but relied on what another said about it").

Plaintiff's last argument is that the release does not release defendants from their own negligence and that releases limiting liability are disfavored at law. See *Brown v. Racquetball Centers Inc.,* 369 Pa. Super. 13, 15-16, 534 A.2d 842, 843 (1987). Plaintiff's argument is based on the following language found in the release at paragraph 4:

"Rider agrees to hold manager/instructor and all successors, assigns, subsidiaries, franchisees, affiliates, officers, directors, employees and agents completely harmless and not liable and releases them from all liability whatsoever and agrees not to sue them on account of or in connection with any claims, causes of action, injuries, damages, costs or expenses arising out of rider's use or presence upon manager/instructor's property and facilities, including without limitation those based on death, bodily injury, property damage, including consequential damages except *if the damages are caused by the direct,*

*willful and wanton and gross negligence of the manager/ director.*" (emphasis added)

Plaintiff suggests the defendant used a form referencing California law and claims that the reference to the term "direct negligence" is confusing and that it should not bar plaintiff from bringing suit in this instance. While direct negligence is not defined, wanton conduct has been defined as:

"Wanton misconduct . . . means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences." *Krivijankski v. Union Railroad Co.,* 357 Pa. Super. 196, 203-204, 515 A.2d 933, 936 (1986).

Plaintiff argues that D.L.M. was negligent in allowing the horses to come within range of each other against the rules of the ring. While this may be negligent, this act or omission does not rise to the level of "wanton." Plaintiff also argues that since the release was drafted based on California law and direct negligence is unclear, the release should be found invalid. The court finds this argument unpersuasive. Clearly, the language direct, wanton and willful describes conduct rising above basic negligence. Additionally, the release states that it is the rider's responsibility to obtain their own insurance coverage, which indicates the document was intended to relieve the defendant school from liability for negligence.

The court finds that the release is effective and summary judgment should, therefore, properly be granted.

432

For the foregoing reasons, defendant Donna Lombardi-Martelli, indiv. and d/b/a D.L.M. Equestrian School Inc.'s motion for summary judgment is granted.

## ORDER

And now, August 3, 1999, upon consideration of defendant Donna Lombardi-Martelli, indiv. and d/b/a D.L.M. Equestrian School Inc.'s motion for summary judgment, plaintiff's response thereto, and oral argument, it is hereby ordered and directed that defendant Donna Lombardi-Martelli, indiv. and d/b/a D.L.M. Equestrian School Inc.'s motion for summary judgment be and is hereby granted for the reasons expressed in the memorandum opinion attached.