J-A24012-16

2016 PA Super 243

| | |
|---|---|
| CHARLES TORO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FITNESS INTERNATIONAL LLC. A/K/A L.A. FITNESS INTERNATIONAL LLC | |
| Appellee | No. 378 EDA 2016 |

Appeal from the Order Entered December 16, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2014, No. 1544

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

OPINION BY SOLANO, J.:                    **FILED NOVEMBER 10, 2016**

Appellant Charles Toro appeals from the trial court's December 16, 2015 order granting summary judgment in favor of Appellee Fitness International, LLC in his action for personal injuries incurred when he slipped and fell in a Fitness locker room.  We affirm.

Fitness operates an L.A. Fitness physical fitness center in Langhorne, Pennsylvania.  Toro was a member of this L.A. Fitness center, and, as part of his membership, he signed a Fitness Membership Agreement ("Membership Agreement").  Trial Court Opinion, 3/17/16, at 2-3.  That Agreement begins, "It is agreed by and between L.A. Fitness International, LLC ("L.A. Fitness") and you, the undersigned Buyer (individually, if you are the Member, and/or as agent or guardian of the Member or responsible party), that you are purchasing a membership from L.A. Fitness according to the terms on both pages of this Membership Agreement . . . ."  Membership Agreement, p. 1.

Included on the back of the first page of the Membership Agreement, within a black printed box, is a provision entitled in bold capital letters: "**IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY**" (the "Waiver Clause"). This Waiver Clause states, in part:

> You hereby acknowledge and agree that use by Member and/or by Member's minor children of L.A. Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and Member assumes full responsibility for such risks. In consideration of Member and Member's minor children being permitted to enter any facility of L.A. Fitness (a "Club") for any purpose including, but not limited to, observation, use of facilities, services or equipment, or participation in any way, Member agrees to the following: Member hereby releases and holds L.A. Fitness, its directors, officers, employees, and agents harmless from all liability to Member, Member's children and Member's personal representatives, assigns, heirs, and next of kin for any loss or damage, and forever gives up any claim or demands therefor, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law, while Member or Member's minor children are in, upon, or about L.A. Fitness['] premises or using any L.A. Fitness facilities, services or equipment.

Membership Agreement at 2. The Clause states that a "risk of injury" under the Clause includes "accidental injuries occurring anywhere in Club dressing rooms, showers and other facilities," and that the Clause "is intended to be as broad and inclusive as is permitted by the law of the State of Pennsylvania." *Id.* The Clause concludes, "Member has read this release and waiver of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from the Agreement have been made." *Id.*

On the first page of the Membership Agreement, just above the signature line, is a paragraph that states, "By signing this Agreement, Buyer acknowledges that Buyer is of legal age, has received a filled-in and completed copy of this Agreement[,] has read and understands the entire agreement including but not limited to the . . . Release and Waiver of Liability and Indemnity, and other Additional Terms and Conditions on the reverse side hereof. . . ." Membership Agreement at 1. Toro signed the Agreement on the signature line located below this paragraph.

Toro alleges that on or about August 14, 2012, while on Fitness' premises as a member and business invitee, he slipped and fell in the L.A. Fitness men's locker room. He testified in an August 2015 deposition that he slipped and fell on an "unusual buildup" of "soapy water," which was "cloudy." He stated that he did not know how the floor became wet or how long it had been wet before he fell, and he said he had never seen such a buildup of soapy water on the floor prior to this incident. Trial Court Opinion, 3/17/16, at 2. In response, Fitness presented an affidavit by Robert Sargent, the General Manager of the L.A. Fitness facility, in which he attested that: (1) he was working when Toro fell; (2) the janitorial staff regularly inspects and maintains the men's locker room where the alleged incident occurred; and (3) on August 14, 2012, prior to the alleged incident, there were no reports from the janitorial or other staff that the floor in the men's locker room was wet. Trial Court Opinion, 3/17/16, at 2-3.

Toro's amended complaint contained one count alleging negligence (premises liability). *See* Amended Complaint, 1/22/15. In it, Toro contended he was "caused to slip and fall by reason of the dangerous and hazardous condition, to wit, a wet and slippery floor, as a result of which he suffered severe personal injuries . . . ." *Id.* at ¶ 9. Toro claimed that Fitness should be held liable because it knew or should have known of the existence of the "dangerous and hazardous condition . . . ." *Id.* at ¶ 8.

On November 2, 2015, Fitness filed a motion for summary judgment, asserting that: (1) Toro could not meet his burden of proving negligence; and (2) Toro's claim was precluded under the terms of the Membership Agreement. *See* Motion for Summary Judgment, 11/2/15. On December 16, 2015, the trial court granted Fitness' motion for summary judgment. While the trial court did not explain its reasoning at that time, its opinion issued pursuant to Appellate Rule 1925(a) explained that it based its decision on both of the grounds raised by Fitness. *See* Trial Court Opinion, 3/17/16. On January 12, 2016, the trial court denied a motion by Toro seeking reconsideration.

On appeal, Toro raises the following issues:

1. Did the lower court err when it granted defendant's motion for summary judgment on the issue of liability when a reasonable jury could find that defendant had constructive notice of the dangerous condition that caused plaintiff's injuries?

2. Did the lower court err when it granted defendant's motion for summary judgment on the issue of liability when a reasonable jury could find that defendant was negligent

- 4 -

when it failed to place mats on the tile floor in the communal bathroom?

3. Did the lower court err when it found that the exculpatory language in the membership agreement was valid despite it being contained in a contract of adhesion and being against public policy?

4. Did the lower court err when it found that the exculpatory language in the membership agreement was enforceable despite there being no evidence in the record from which it could find that plaintiff had read and understood the exculpatory language and a reasonable jury could find that the exculpatory language was not sufficiently prominent such that a reasonable person would be aware of it?

Appellant's Brief at 7.

In reviewing an order granting summary judgment, this Court applies the following principles:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (internal quotation marks and citations omitted).

We divide Toro's issues into two categories: the Waiver Clause (Toro's issues 3 and 4); and proof of negligence (Toro's issues 1 and 2).

**The Waiver Clause**

The Waiver Clause in Toro's Membership Agreement provided that, by signing the Agreement, Toro "releases and holds L.A. Fitness . . . harmless from all liability" for any injury he suffered on the premises, including an injury in a dressing room, shower, or other part of the facility, that was caused by L.A. Fitness' negligence. The trial court held that the Waiver Clause was valid and enforceable. *See* Trial Court Opinion, 3/17/16, at 8-10. We agree, and hold that the trial court properly granted summary judgment in favor of Fitness based on the Waiver Clause.

To be valid, an exculpatory clause, such as the Waiver Clause in this case, must meet three conditions: "First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion." *Chepkevich v. Hidden Valley Resort*, **L.P.**, 2 A.3d 1174, 1189 (Pa. 2010). Moreover, a valid exculpatory clause will be enforceable only if "the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." *Id.*

Toro argues that the Waiver Clause is invalid because it contravenes public policy. **See** Appellant's Brief at 17-18. The trial court held that the Waiver Clause is not contrary to public policy because Toro "was engaged in a voluntary recreational activity, which did not involve any public entity or concern." Trial Court Opinion, 3/17/16, at 9 (relying upon **Chepkevich**). We agree.

Exculpatory provisions "violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." **Seaton v. E. Windsor Speedway, Inc.**, 582 A.2d 1380, 1382 (Pa. Super. 1990). The Supreme Court of Pennsylvania has "consistently . . . been reluctant to invalidate a contractual provision due to public policy concerns." **Williams v. GEICO Gov't Employees Ins. Co.**, 32 A.3d 1195, 1200 (Pa. 2011). It has explained:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

\* \* \*

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Id.* (citation omitted).

Relying on **Boyd v. Smith**, 94 A.2d 44 (Pa. 1953), Toro argues that the Waiver Clause contravenes public policy because it relates to "health and safety." **See** Appellant's Brief at 17. In **Boyd**, a landlord failed to install a fire escape in an apartment building, in violation of a statute requiring fire escapes. **See Boyd**, 94 A.2d at 45. When a resident was injured jumping out of a window during a fire, the landlord attempted to avoid liability by relying on an exculpatory clause in the lease agreement. **See id.** at 45-46. The Supreme Court held that the exculpatory clause was invalid because it contravened the public policy set forth in the statute requiring fire escapes: "[w]here the legislature has, by definite and unequivocal language, determined the public policy of this Commonwealth with regard to a particular subject, that pronouncement cannot be set aside and rendered unenforceable by a contract between individuals." **Id.** at 46.

This case is distinguishable from **Boyd** because Toro has not identified a dominant public policy, established by statute or otherwise, relating to fitness centers. Toro cites one New Jersey case in which a fitness center's waiver clause was found invalid, **see** Appellant's Brief at 17-18, but that

decision is not controlling or persuasive here.[1]  Instead, this case is governed by our recent decision in **Hinkal v. Pardoe**, 133 A.3d 738, 743 (Pa. Super.) (*en banc*), **appeal denied**, 141 A.3d 481 (Pa. 2016), in which we upheld a similar clause in a Gold's Gym membership agreement as it applied to a claim for personal injuries incurred during receipt of personal training services at the gym.  We noted with approval the trial court's holding in that case that "the exculpatory language at issue cannot be said to violate public policy because it was an agreement between a private individual and entities, and because it did not address matters of interest to the public or the state."  133 A.3d at 741-42.  Although two of our respected judges opined in dissent that an exculpatory clause in a contract to provide personal training services at a gym sufficiently "implicates health and safety concerns" that it should be held to contravene public policy, *id.* at 747-49 (dissenting opinion), the majority of the Court, sitting *en banc*, did not adopt that view.

This case does not deal with personal training services.  Instead, Toro was injured when he slipped in the locker room of a fitness center where he

---

[1] The decision, **Walters v. YMCA**, 96 A.3d 323 (N.J. App. Div. 2014), did not turn on any special public policy consideration involving health facilities. Rather, the New Jersey court disfavored the clause at issue because, "if applied literally, it would eviscerate the common law duty of care owed by defendant to its invitees, regardless of the nature of the business activity involved."  **Id.** at 328.  If adopted, the reasoning of **Walters** would make most exculpatory clauses invalid.  That is not the law of Pennsylvania.

was using the facilities. Where, as here, an individual is engaged in a voluntary athletic or recreational activity, the Supreme Court of Pennsylvania has held that an exculpatory clause in a contract for use of facilities is not contrary to public policy. *See Chepkevich*, 2 A.3d at 1191 (skiing); *see also McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 120 (Pa. Super. 2015) (whitewater rafting), *appeal denied*, 130 A.3d 1291 (Pa. 2015)*; Valeo v. Pocono Int'l Raceway Inc.*, 500 A.2d 492, 493 (Pa. Super. 1985) (automobile racing).

In *Chepkevich*, the plaintiff purchased a season pass at a ski resort. At that time, she signed a release that provided that, by signing it, she agreed not to sue the resort or its employees "if injured while using their facilities regardless of any negligence on their part." 2 A.3d at 1176. Subsequently, the plaintiff was injured when she fell from a ski lift at the resort, and she sued the resort, claiming that one of its employees had been negligent. The trial court granted summary judgment in favor of the resort on the basis of the signed release. *Id.* at 1175-766. The Supreme Court of Pennsylvania agreed, holding that summary judgment was properly entered based on the release and that the release was not contrary to public policy. *Id.* at 1188, 1191.

Here, as in *Chepkevich*, Toro was engaged in a voluntary athletic or recreational activity: going to the gym. Before he was injured, he signed an agreement that explicitly provided that, by signing it, he waived all claims for any injury he suffered at the L.A. Fitness facility, even if the injury was

caused by the negligence of L.A. Fitness. As in **Chepkevich**, the Waiver Clause in this case is not contrary to public policy, and the trial court therefore was correct in reaching that conclusion. **See** Trial Court Opinion, 3/17/16, at 9. Accordingly, the clause is a complete bar to Toro's negligence claim.

Next, Toro argues that the Waiver Clause is invalid because the Membership Agreement in which it appears is a contract of adhesion. **See** Appellant's Brief at 18-19. The trial court also rejected this argument, explaining that Toro "chose to seek membership and he was not under any commitment or duress to make use of the fitness center." Trial Court Opinion, 3/17/16, at 9. Once again, we agree.

"An adhesion contract is a 'standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms.'" **Chepkevich**, 2 A.3d at 1190 (quoting BLACK'S LAW DICTIONARY 342 (8th ed. 2004)). However, an exculpatory agreement involving use of a commercial facility for voluntary athletic or recreational activities is not considered a contract of adhesion because "[t]he signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services . . . ." **Id.** at 1191. Relying on this authority, the trial court correctly concluded that the Membership

Agreement in this case was not a contract of adhesion. Trial Court Opinion, 3/17/16, at 9.[2]

Toro further argues that even if the Waiver Clause is valid, it is unenforceable because he does not remember whether he read it. **See** Appellant's Brief at 20-21.[3] Toro's argument is unavailing. Failure to read an agreement before signing it does not render the agreement either invalid or unenforceable. **See Hinkal**, 133 A.3d at 743.

Finally, relying on **Beck-Hummel v. Ski Shawnee, Inc.**, 902 A.2d 1266 (Pa. Super. 2006), Toro argues that the Waiver Clause is unenforceable because it was not sufficiently conspicuous to put him on notice of its terms. **See** Appellant's Brief at 20-22. In **Beck-Hummel**, this Court held that there was a genuine issue of material fact as to whether a

---

[2] Toro likens his Membership Agreement to automobile insurance policies, which are contracts of adhesion. **See** Appellant's Brief at 19. However, we find the cases relating to insurance to be inapposite here, in light of the more pertinent authority relating to voluntary athletic and recreational activities, such as **Chepkevich**. Moreover, in Pennsylvania, maintenance of an automobile insurance policy is required by law as a condition for most residents to operate a motor vehicle. **See** Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. §§ 1701 *et seq.*

[3] As the trial court noted, Toro testified at his deposition that he read the Membership Agreement. Trial Court Opinion, 3/17/16 at 10 (citing deposition). After his deposition, and in response to Fitness' motion for summary judgment, Toro presented an affidavit in which he stated that he did not read the entire agreement and did not recall reading the Waiver Clause. **See** Plaintiff's Response to Defendant's Motion for Summary Judgment, Ex. A. Because we hold that Toro is bound by the agreement regardless of whether he read it, Toro's affidavit cannot bar the grant of summary judgment.

release on a snow tubing ticket was enforceable where the buyer had neither read nor signed the release and the release language was not conspicuous. *See Beck-Hummel*, 902 A.2d at 1275. Notably, the court distinguished cases involving signed releases. *See id.* at 1270.

Here, the trial court concluded that the Waiver Clause was sufficiently conspicuous, under the standards set forth in *Beck-Hummel*, to put Toro on notice of its terms. *See* Trial Court Opinion, 3/17/16, at 10. The trial court noted that "[t]he Waiver Clause was emphasized in a box beginning with bold capitalized letters specifically indicating the release of Defendant for injuries allegedly sustained 'on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise. . . .'" *Id.* (quoting Membership Agreement). While we agree with the trial court's conclusion that the principles set forth in *Beck-Hummel* do not preclude summary judgment for Fitness, our analysis differs.[4]

In *Hinkal*, 133 A.3d at 745, this Court held that *Beck-Hummel* is inapplicable where, as here, a signed agreement exists between the parties. We held that an exculpatory clause in a signed fitness center agreement therefore is enforceable even if the member did not read it. We explained:

---

[4] "As an appellate court, we may affirm the decision of the lower court by reasoning different than that used by the lower court." *Fennell v. Nationwide Mut. Fire Ins. Co.*, 603 A.2d 1064, 1066 n.2 (Pa. Super. 1992), *appeal denied*, 617 A.2d 1274 (Pa. 1992) (table).

The distinguishing factor between **Beck–Hummel** and the instant matter that makes resort to **Beck–Hummel** inapposite is the nature of the respective agreements. In **Beck–Hummel**, the release provision was contained on the face of an entry ticket purchased for use of a ski facility. The ticket did not require a signature or an express acknowledgment that its terms were read and accepted before using the facility. Nothing about the ticket ensured that a purchaser would be aware of its release provision. The purchasers were mere recipients of the document. In short, there was not sufficient evidence to find conclusively that there was a meeting of the minds that part of the consideration for use of the facility was acceptance of a release provision. In stark contrast, here there is a written, signed and acknowledged agreement between the parties. Not only is the written contract signed by Appellant, but also, as previously stated, the contract contained an unambiguous directive not to sign the agreement until reading both sides, a clear pronouncement that the terms on both sides of the form are part of the agreement, and a straightforward statement that the agreement constitutes the entire agreement between the parties. Accordingly, there is no need here to resort to proof of notice, as in **Beck–Hummel**, to discern if assent to an agreement had been reached.

**Hinkal**, 133 A.3d at 744–45.

Similarly, here Toro signed the Membership Agreement, which stated that by signing it, he acknowledged that he "has read and understands the entire agreement including but not limited to the . . . Release and Waiver of Liability and Indemnity . . . ." Trial Court Opinion, 3/17/16, at 4 (quoting Membership Agreement). Therefore, as in **Hinkal**, there is no need to resort to proof of notice or an analysis of the clause's conspicuity to determine if there was a meeting of the minds. Toro's signature of the Membership Agreement formed a valid contract, and he is bound by its terms. We therefore find no error in the trial court's grant of summary judgment in this regard.

- 14 -

**Negligence**

The other ground upon which the trial court granted summary judgment was that Toro failed to establish that Fitness was negligent. We agree with the trial court's analysis, and hold that summary judgment was also proper on that basis.

The trial court explained the legal principles that apply in a premises liability action:

> Under Pennsylvania law, "[t]he mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." ***Estate of Swift by Swift v. Northeastern Hosp.***, 690 A.2d 719, 722 (Pa. Super. Ct. 1997). A plaintiff must prove four elements to establish negligence by a defendant: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. ***Id.*** "The nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff[']s injury." ***Id.***

Trial Court Opinion, 3/17/16, at 5. The trial court explained that where, as here, the plaintiff is a business invitee, the plaintiff must show that the property owner either created or had actual or constructive notice of the dangerous condition. ***Id.***

The trial court concluded that Toro could not prevail on his negligence claim because he had not offered any evidence that Fitness caused the floor to be wet or had actual or constructive notice of its condition. ***See*** Trial Court Opinion, 3/17/16, at 7. The court explained:

> There is no evidence that Defendant caused the floor to be wet. Plaintiff testified that he did not know how the floor became wet,

- 15 -

and could only guess as to the source. Additionally, there is no evidence that Defendant had actual or constructive knowledge of the floor's wet condition. Plaintiff also admitted that he did not know how long the floor was wet prior to the alleged incident. There were no reports from Defendant's staff of the floor being wet prior to Plaintiff's accident. Plaintiff has failed to satisfy his burden of proof as to his claims of negligence, entitling Defendant to summary judgment because there is no evidence that the floor was wet for such a length of time that Defendant should have been aware of it, and could be charged with constructive notice.

*Id.* (citations to the record omitted).

Toro argues that the trial court erred because a reasonable jury could find that Fitness had constructive notice of the wet floor. Appellant's Brief at 12-13. Relying on *McKelvey v. Juniata Borough*, 108 A. 205 (Pa. 1919), Toro argues that a jury could infer from the amount and appearance of the water — which he described as an unusual buildup of soapy, cloudy water, which he had never seen before — "that the condition existed for a sufficient period of time such that [Fitness] should have become aware of it prior to [his] fall." Appellant's Brief at 13. While the trial court's opinion does not specifically address *McKelvey*, we find that case to be inapposite. In *McKelvey*, the Court held that the defendant had constructive notice of a two-foot deep hole in a road based on the nature of the condition and the length of time it existed prior to the plaintiff's fall (at least one month). *McKelvey*, 108 A. at 205-6. Here, by contrast, the condition was transitory, and there was no evidence as to how long it existed before Toro fell.

Toro also argues that because Fitness does not keep accurate logs of its inspections and maintenance, "the condition **could have** existed for a

long period of time." Appellant's Brief at 13 (emphasis added). Again, the trial court did not address this particular aspect of Toro's argument, but we find it to be meritless because it is based on mere speculation. **See Krauss v. Trane U.S. Inc.**, 104 A.3d 556, 568 (Pa. Super. 2014) ("A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor").

Finally, Toro argues that Fitness' failure to place mats on the locker room floor was negligent as a matter of law. **See** Appellant's Brief at 14-16. The trial court explained the duty owed to invitees, as set forth in Section 343 of the Restatement (Second) of Torts (1965):

> [T]he mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition[,] is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. In order to recover damages in a slip and fall case such as this, the invitee must present evidence which proves that the store owner deviated in some way from his duty of reasonable care under the existing circumstances. This evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition. Section 343 also requires the invitee to prove either that the store owner helped to create the harmful condition, or that it had actual or constructive notice of the condition.

Trial Court Opinion, 3/17/16, at 7 (quoting **Rodriguez v. Kravco Simon Co.**, 111 A.3d 1191, 1193 (Pa. Super. 2015)). Under these standards, the trial court correctly concluded that there was no evidence that the absence of floor mats was negligent. **See** Trial Court Opinion, 3/17/16, at 8. There was no evidence that Fitness knew or had reason to know of a harmful

- 17 -

condition in the locker room that required it to install floor mats. The uncontradicted evidence, rather, was that Fitness had never seen a buildup of soapy water on the locker room floor prior to this accident, and Toro himself testified that he too had never seen such a condition. Toro proffered no evidence that floor mats are always required in locker rooms or that there was anything peculiar about this floor that required them.

Toro argues that Fitness should be charged with knowing that the floor would become wet, or, at least that a jury could conclude that the floor would become wet on a regular basis. He further argues that the trial court should have taken judicial notice of the fact that "[v]irtually any tile will become slippery when water and/or soap are allowed to accumulate thereon." Appellant's Brief at 15 (citing **Miller v. Peter J. Schmitt & Co.**, 592 A.2d 1324, 1328–29 (Pa. Super. 1991) (defendant knew that independent contractor would be delivering ice on a hot day, would likely use an open cart to transport the ice, and usually carried a mop because of the possibility of water dripping onto the floor), **appeal denied**, 602 A.2d 860 (Pa. 1992) (table); **Cohen v. Food Fair**, 155 A.2d 441, 443 (Pa. Super. 1959) (store manager knew floor became wet on rainy days and usually put gravel on the floor, but did not use gravel on the day of the incident); **Blakely v. St. Marguerite's Mut. Beneficial Soc'y**, 10 Pa. D. & C. 5th 248, 257 (C.P. Lackawanna 2009) (routine use of floor mats, which were missing at time of incident, indicated that defendant had notice of slippery floor near fryer)).

However, Toro's argument fails because it is not based on evidence. As the trial court concluded, Toro offered no evidence that the floor on which he fell had a tendency to be wet on a regular basis, or that Fitness had any other reason to know that the floor would be wet when Toro fell. ***See*** Trial Court Opinion, 3/17/16, at 8. The absence of evidence that Fitness had knowledge or notice of the wet floor distinguishes Toro's case from the cases upon which he relies in his brief. Accordingly, the trial court correctly granted summary judgment in favor of Fitness on this issue. ***See*** Trial Court Opinion, 3/17/16, at 8.

For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of Fitness.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2016