J-S06017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DOLORES VINSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FITNESS & SPORTS CLUBS, LLC, | : | No. 2875 EDA 2016 |
| FITNESS INTERNATIONAL, LLC, LA | : | |
| FITNESS INTERNATIONAL, LLC | : | |

Appeal from the Order Entered August 11, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  150703082

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MARCH 23, 2018**

Dolores Vinson appeals from the trial court's August 11, 2016 order granting summary judgment in favor of Appellee, Fitness International, LLC (f/k/a L.A. Fitness International, LLC)("L.A. Fitness"). We affirm.

L.A. Fitness operates fitness clubs/gyms, including the one here at issue, which is located in Huntingdon Valley, Pennsylvania. Vinson became a member of this fitness facility on July 4, 2012, when she signed a three-page membership agreement ("Membership Agreement"). The first page of the Membership Agreement states*, inter alia*, that L.A. Fitness and the undersigned buyer agree "that you are purchasing a membership from L.A. Fitness according to the terms on both pages of this Membership Agreement and the Membership Policies and Club Rules and Regulations . . . ."

Membership Agreement at 1. Vinson signed the Membership Agreement at the bottom of page 1.

The second page of the Member Agreement contains an exculpatory provision ("Exculpatory Clause") that is printed enclosed in a black box. The Exculpatory Clause reads as follows:

> **IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY.** You hereby acknowledge and agree that use by Member and/or by Members minor children of L.A. Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and Member assumes full responsibility for such risks. In consideration of Member and Member's minor children being permitted to enter any facility of L.A. Fitness (a "Club") for any purpose including, but not limited to, observation, use of facilities, services or equipment, or participation in any way, Member agrees to the following: Member hereby releases and holds L.A. Fitness, its directors, officers, employees, and agents harmless from all liability to Member, Member's children and Member's personal representatives, assigns, heirs, and next of kin for any loss or damage, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law, while Member or Member's minor children are in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment. Member also hereby agrees to indemnify L.A. Fitness from any loss, liability, damage or cost L.A. Fitness may incur due to the presence of Member or Member's children in, upon or about the L.A. Fitness premises or in any way observing or using any facilities or equipment of L.A. Fitness whether caused by the negligence of Member(s) or otherwise. You represent (a) that Member and Member's minor children are in good physical condition and have no disability, illness, or other condition that could prevent Member(s) from exercising without injury or impairment of health, and (b) that Member has consulted a physician concerning an exercise program that will not risk injury to Member or impairment of Members health. Such risk of injury includes (but is not limited to): injuries arising from use by Member or others of exercise

equipment and machines; injuries arising from participation by Member or others in supervised or unsupervised activities or programs at a Club; injuries and medical disorders arising from exercising at a Club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments, among others; and **accidental injuries occurring anywhere in Club dressing rooms, showers and other facilities.** Member further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the State of Pennsylvania and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. Member has read this release and waiver of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from this Agreement have been made.

Membership Agreement at 2 (emphasis added).

According to her deposition testimony, Vinson acknowledges signing the Membership Agreement, although she does not recall reading the document at the time she signed it. Vinson Deposition Testimony, 5/10/16, at 71-73. Directly above the signature line of the Membership Agreement, the following language is provided: "By signing this Agreement, Buyer acknowledges that Buyer . . . has received a filled-in and completed copy of the Agreement has read and understands the entire agreement including but not limited to . . . the Release and Waiver of Liability and Indemnity . . . ." Membership Agreement at 1.

On July 28, 2015, Vinson filed a complaint against L.A. Fitness, sounding in negligence. Specifically, Vinson claimed that on October 1, 2013, she tripped and fell on a wet floor mat causing her to suffer serious and permanent personal injuries. Vinson's Complaint at 2. In short, Vinson averred that L.A. Fitness's negligence regarding the maintenance of the premises caused the

conditions that directly resulted in her injuries. *Id.* 2-4. L.A. Fitness filed an Answer and New Matter on September 3, 2015, wherein it asserted that Vinson's claim was barred by the Exculpatory Clause. Vinson countered by filing a Reply on October 1, 2015.

L.A. Fitness filed a Motion for Summary Judgment on June 30, 2016, claiming that (1) Vinson could not demonstrate that L.A. Fitness created or had notice of the wet mat; (2) Vinson had not provided the requisite expert to establish the applicable standard of care; and (3) the Exculpatory Clause precluded recovery. The trial court granted L.A. Fitness's motion on August 11, 2016, without further explanation. Vinson filed a court-ordered Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal and, in a Rule 1925(a) Opinion, the trial court explained that it granted L.A. Fitness's Motion for Summary Judgment on the basis of the Exculpatory Clause. The instant timely appeal followed.

Vinson raises two issues for our review:

1. Whether the trial court abused its discretion and otherwise committed an error of law when it improperly granted [L.A. Fitness's] Motion for Summary Judgment?

2. Whether the trial court abused its discretion and otherwise committed an error of law when it improperly granted [L.A. Fitness's] Motion for Summary Judgment where there exists a genuine dispute as to material fact as to whether important public policy issues are implicated and render the exculpatory provision unenforceable?

Vinson's Brief at 6.

The crux of both of Vinson's issues lies in her contention that the Exculpatory Clause is invalid because it contravenes public policy. Vinson specifically asserts that her claim involves a vital matter of public health and safety. She argues that her cause of action involves the maintenance of facilities, which concerns the obvious health and safety of members of the public. To this end, she relies upon **Leidy v. Deseret Enterprises, Inc.**, 381 A.2d 164 (Pa.Super. 1977) (vacating grant of judgment on pleadings where plaintiffs had pleaded that exculpatory provision in spa contract was unconscionable).

Conversely, L.A. Fitness contends that the Exculpatory Clause does not violate public policy because the Membership Agreement constituted a contract between private parties and did not involve any public entity or concern. In support, L.A. Fitness specifically points to this Court's recent decisions in **Toro v. Fitness International LLC.**, 150 A.3d 968 (Pa.Super. 2016) (holding that same exculpatory clause as is at issue here was enforceable and not contrary to public policy),[1] and **Hinkal v. Pardoe**, 133 A.3d 738 (Pa.Super. 2016), *appeal denied*, 141 A.3d 481 (Pa. 2016) (holding

---

[1] Vinson argues that **Toro** should not be applicable to the instant matter because that case was decided several months after the trial court granted L.A. Fitness summary judgment in this case. However, it is well settled that "[n]ormally, we apply a new decision to cases pending on appeal at the time of the decision. The general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision." **Christy v. Cranberry Volunteer Ambulance Corps, Inc.**, 856 A.2d 43, 51 (Pa. 2004) (citations and quotations omitted). Therefore, we discern no err in the application of **Toro** to the instant case.

exculpatory provision in gym membership agreement to be valid and enforceable). The trial court agreed with L.A. Fitness, finding the Exculpatory Clause "to be valid and enforceable against the [] arguments raised by [Vinson]." Trial Court Op., 8/28/17, a 2. We agree with the trial court, and conclude that no relief is due.

We begin by noting that an order granting summary judgment is subject to the following scope and standard of appellate review:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. [Pa.R.C.P. 1035.2.] The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof… establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Toro*, 150 A.3d at 972 (quoting ***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001)).

The Pennsylvania Supreme Court has held that exculpatory provisions in contracts are valid where three conditions are met: "First, the clause must not contravene public policy. Secondly, the contract must be between persons

- 6 -

relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189 (Pa. 2010) (holding exculpatory provision contained in contract regarding season pass at ski resort was valid and did not contravene public policy).

When embarking on a public policy analysis, we recognize that exculpatory provisions "violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." *Seaton v. E. Windsor Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa.Super. 1990). Our Supreme Court has set a high bar that a party must clear before a court may invalidate a contract on public policy grounds:

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Williams v. GEICO Gov't Employees Ins. Co.*, 32 A.3d 1195, 1200 (Pa. 2011) (citation omitted). "[P]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Id.*

The case *sub judice* is very similar to *Toro*. In that case, this Court considered whether the same exculpatory clause here at issue, employed by

- 7 -

the same Appellee, L.A. Fitness, violated public policy. In **Toro**, the plaintiff slipped and fell on what he described as an "unusual buildup" of "soapy water" on the floor. **Toro**, 150 A.3d at 971. The trial court granted summary judgment in favor of L.A. Fitness on the basis of the exculpatory clause. Our Court affirmed and specifically concluded that the exculpatory clause did not contravene public policy:

> Here, as in **Chepkevich**, Toro was engaged in a voluntary athletic or recreational activity: going to the gym. Before he was injured, he signed an agreement that explicitly provided that, by signing it, he waived all claims for any injury he suffered at the L.A. Fitness facility, even if the injury was caused by the negligence of L.A. Fitness. As in **Chepkevich** the Waiver Clause in this case is not contrary to public policy and the trial court therefore was correct in reaching that conclusion.

**Id.** at 974.

Vinson attempts to distinguish **Toro** by emphasizing factual differences. She claims the plaintiff's injury there involved a transient hazard, *i.e.*, an unusual build-up of water, whereas here, Vinson contends, the wet mat indicated a systemic problem with facility maintenance. Therefore, according to Vinson, this case more strongly implicates the public interest in health and safety. However, we find this distinction unavailing because both cases involve private individuals engaged in recreational activity, which is not classifiable as a matter of public or state interest. **See Seaton**, 582 A.2d at 1382; **Williams**, 32 A.3d at 1200.

Likewise, this Court's decision in **Hinkal** also supports the trial court's grant of summary judgment in this case. There, we upheld a similar

exculpatory provision within a Gold's Gym membership agreement, thereby barring a personal injury claim purportedly sustained during a personal training session at that gym. In so holding, we emphasized that "the exculpatory language at issue cannot be said to violate public policy because it was an agreement between a private individual and entities, and because it did not address matters of interest to the public or the state." *Hinkal*, 133 A.3d at 742.[2] Vinson attempts to distinguish *Hinkal* by highlighting that the injury in that case occurred during the course of athletic pursuits, whereas Vinson alleges she sustained injuries due to faulty maintenance. Once again, we find this factual distinction to be of no movement because of the private nature of the Membership Agreement.

Vinson argues that this case is more closely akin to *Leidy*. There, this Court concluded that a spa contract's exculpatory provision did not did not entitle the spa to judgment on the pleadings. A physical therapist at the spa had performed services on the plaintiff that caused injury and were directly contrary to a doctor's directives. *Leidy*, 381 A.2d at 166. The spa had pleaded the exculpatory provision as a defense to the action, and the plaintiff had pleaded in response that the provision was unenforceable because it was

_____

[2] We acknowledge that Judge Lazarus, joined by Judge Panella, authored a dissent in *Hinkal* wherein they opined that personal training services substantially concern "health and safety" to the extent that the exculpatory provision at issue there was invalid as it violated public policy. Significantly, the majority in *Hinkal*, sitting *en banc*, disagreed with this view and, in any event, the instant case does not involve personal training services.

unconscionable. *Id.* Noting that the case was only at the pleading stage, and not before us on appeal from the grant of summary judgment, we reversed the grant of judgment on the pleadings. *Id.* 169. We pointed out that the spa's physical therapist was subject to the Physical Therapy Practice Act, 63 P.S. §§ 1301-1313, which permits physical therapists to perform treatments only pursuant to a physician's orders.[3] We explained that the statute supported the claim that the exculpatory clause was unconscionable. *Id.* We held that because the plaintiffs had pleaded the unconscionability of the exculpatory provision, the entry of judgment on the pleadings was improper. *Id.* at 170.

This case is on entirely different footing than *Leidy*. This case comes to us on appeal from an order granting summary judgment, not judgment on the pleadings. The procedural posture matters because here, unlike in *Leidy*, the determination of whether the defendant was entitled to judgment as a matter of law was based not on contradictory allegations in pleadings, but on the parties' arguments and evidence, developed after a full opportunity for discovery.

Here, Vinson was voluntarily engaged in recreational activity, attending the gym, and was subject to the Membership Agreement, an agreement

---

[3] *See* 63 P.S. § 1309 ("Any person licensed under this act as a physical therapist shall not treat human ailments by physical therapy or otherwise except by the referral of a person licensed in this State as a physician . . .").

between private parties. Vinson has not identified any statutory provision, no administrative regulation, or any legal precedent to support her claim that the Exculpatory Clause was unenforceable. She instead relies on mere suppositions of the public interest, which are insufficient to invalidate a contract provision for violation of public policy. *See Williams*, 32 A.3d at 1200. Thus, Vinson's issues on appeal lack merit.[4] Accordingly, we affirm the trial court's entry of summary judgment in favor of L.A. Fitness.

Order affirmed.

_____

[4] In a footnote, Vinson asserts, for the first time on appeal, that she might not have even received the Exculpatory Clause because it was printed on the second page of the Membership Agreement and she only signed the first page. Vinson's Brief at 15. This argument is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). However, even were it not waived, Vinson's claim lacks merit because she acknowledged receiving the Exculpatory Clause via the language just above the signature line on the first page of the Membership Agreement. The language states that she "has received a filled-in and completed copy of the Agreement has read and understands the entire agreement including but not limited to . . . the Release and Waiver of Liability and Indemnity." Further, whether Vinson took the time to read the Exculpatory Clause is beside the point. It is well settled that "failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." *In re Estate of Olson*, 291 A.2d 95, 98 (Pa. 1972) (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/18