J-A20032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LG FINANCIAL CONSULTANTS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LAWYERS FUNDING GROUP, LLC | : | |
| AND ALAN R. ZIBELMAN, ESQUIRE | : | |
| | : | No. 717 EDA 2021 |
| Appellant | : | |

Appeal from the Judgment Entered October 16, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No: 181002188

BEFORE:  STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:               **FILED SEPTEMBER 08, 2022**

Lawyers Funding Group, LLC and Alan R. Zibelman, Esquire (collectively, Lawyers Funding) appeal from the judgment[1] entered in favor of L.G. Financial Consultants, Inc. (LG) in the Court of Common Pleas of Philadelphia County (trial court).  After a hearing, a judgment was entered against Lawyers Funding for $63,003.50, which included $40,000.00 in principal, plus interest and attorneys' fees.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Lawyers Funding purports to appeal from the March 2, 2021 order denying their post-trial motions.  However, an appeal lies from the judgment, not from the order denying post-trial motions.  **_See Jackson v. Kassab_**, 812 A.2d 1233 n.1 (Pa. Super. 2002), _appeal denied_, 825 A.2d 1261 (Pa. 2003).  We have amended the caption accordingly.  **_See id._**

On appeal, Lawyers Funding argues that the court erred in assessing damages where the loan service agent lacked standing and was unable to provide evidence of the loan balance and in granting summary judgment as to liability, improperly shifting the burden of proof. Discerning that its arguments have no merit, we affirm.

## I.

We take the following factual background and procedural history from the trial court's October 16, 2020, March 2, 2021, and January 19, 2022 opinions and our independent review of the record.

## A.

Lawyers Funding is a law firm and Zibelman is its managing member. Kenneth Rubin (Rubin) became the director of operations of Lawyers Funding in 2012 and is responsible for maintaining its books. LG is a commercial lender to small businesses, particularly attorneys and law firms. Rodney Green is the principal and original owner of LG, and his son, Anthony P. Green, became an owner in 2018. GFCIB Advisors (GFCIB) became the servicing agent for LG in 2016, and H. Jack Miller (Miller) is its managing member.

On April 9, 2009, LG made a $100,000.00 loan (the Loan) to Lawyers Funding, which was evidenced by a Confession of Judgment Promissory Note (the Note). On April 14, 2009, Lawyers Funding executed and delivered a Loan Agreement and Guaranty of Payment as security for the Loan.

The parties entered into seven Loan Modification Agreements through June 13, 2013, with Lawyers Funding borrowing additional money each time. The final Loan Modification Agreement, memorialized in Loan Modification #9, was entered on April 1, 2013, and Lawyers Funding borrowed $250,000. The term of Loan Modification #9 was five years (which extended the maturity date to March 31, 2018), with payments of $4,000.00 per month and a two percent default rate of interest. All other terms and conditions of the original April 14, 2009 Note remained in full force and effect, including a confession of judgment provision that provided for attorneys' fees in the amount of whichever is greater of twenty percent of the unpaid principal at the time of judgment or $2,000.00, plus expenses and costs of suit. From the inception of the Loan relationship, the lender-creditor relationship and Lawyers Funding payment history were both good.

**B.**

In approximately July or August 2016, Rodney Green retained the services of GFCIB, commercial lenders and servicers of commercial real estate, to act as the servicing agent for certain loans within the LG portfolio, including that of Lawyers Funding, effective September 1, 2016. Administering and servicing the Loan included collecting loan payments, disbursing payments to LG, workout and legal matters.

Miller has been the managing member of GFCIB since 2011 and is responsible for new funding of loans and servicing of existing loans. LG

provided Miller with all documents related to Lawyers Funding, including copies of loan documents, modifications, payment history and correspondence. The servicing agreement required written consent from the owner, at that time identified as LG and other entities controlled by Rodney Green, to commence litigation.

Rodney Green, on behalf of LG, sent a letter to all clients on August 11, 2016, advising them that he was retiring and that they were to remit all future payments to GFCIB. On August 29, 2016, GFCIB sent correspondence to all LG clients, including Lawyers Funding, to advise that they were now administering the loan and that, beginning September 2016, all payments should be sent to them. Although the GFCIB August 29, 2016 correspondence included the September 2016 invoice, the letter advised that GFCIB would not be mailing monthly invoices. After Lawyers Funding refused to make monthly payments without receiving invoices, GFCIB provided some of them, but generally, Lawyers Funding was required to calculate interest due each month.

On April 1, 2018, LG and GFCIB entered into an amendment to the servicing agreement because "the Parties desire to continue with the Agreement for an additional term of two (2) years effective 01 March 2018." (Exhibit P-2, Amendment to Loan Service Agreement, 4/01/18, at 1). The amendment further provides, in pertinent part, that:

> 1. The term of this Agreement shall begin on the Effective Date (i.e. March 1, 2018) and end on the second anniversary of the Effective Date (the "Term"), unless sooner terminated in accordance with Section 5, below. After the end of the Term, this

Agreement shall be renewable upon the written agreement of the Parties.

\*    \*    \*

3. OWNER as specified in the executed AGREEMENT is amended to include [LG], The RODNEY H. GREEN TRUST and other entities controlled by RODNEY H. GREEN, ANTHONY P. GREEN, JESSE K. GREEN ("OWNERs");

\*    \*    \*

5. This AGREEMENT will be automatically renewed subject to a sixty-day notification from any party of their intent to withdraw from this AGREEMENT.

(*Id.* at ¶¶ 1, 3, 5).

It is undisputed that GFCIB and LG did not issue a sixty-day notice of intent to withdraw from the servicing agreement pursuant to Paragraph 5.

**C.**

In August, September and December 2017, Lawyers Funding admittedly failed to pay on the Loan. (*See* N.T., 153); (Exhibit D-23, Vendor Quick Report).[2] The last payment was made on December 6, 2017, with no payments made in 2018. (*See* N.T., 52-53, 159-60); (Exhibit P-3, Account History as of July 31, 2020).

On October 16, 2018, LG, through GFCIB, confessed judgment against Lawyers Funding for $93,280.28 for its breach of the Loan by failure to make

---

[2] (*See also* Exhibit C to Lawyers Funding's November 1, 2019 Response to the Motion for Summary Judgment).

payment. Lawyers Funding filed a petition to strike or open the confessed judgment on November 21, 2018. The petition did not dispute that Lawyers Funding executed the Loan documents or that it defaulted, but stated that Lawyers Funding only owed $40,000.00 on the principal balance. (**See** Petition to Strike and/or Open, at 4). The trial court opened judgment on December 26, 2018, because the factual dispute existed about the principal amount due.

LG filed a motion for summary judgment on October 4, 2019. Zibelman filed a *pro se* response on behalf of himself and the corporation on November 1, 2019, and a counseled response in opposition was filed on November 4, 2019. Lawyers Funding admitted it was in breach because of the default and that monies were owed to LG, but disputed the outstanding amount, arguing that only $40,000.00 was due on the principal balance. (Response in Opposition to Plaintiff's Motion for Summary Judgment, 11/01/19, at ¶¶ 13-15 and 35-38); (Memorandum of Law, 11/01/19, at 4) (pagination provided); (Response in Opposition to Plaintiff's Motion for Summary Judgment, 11/04/19, at ¶ 16).

On February 27, 2020, the trial court "granted the motion for summary judgment in favor of [LG] on liability[3] and denied the motion as to damages.

_____

[3] "Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a
*(Footnote Continued Next Page)*

The court found that disputed issues of material fact existed as to the amount owed to [LG] by [Lawyers Funding] and Zibelman." (Trial Court Opinion, 10/16/20, at ¶ 12).

**D.**

At the assessment of damages hearing, the parties presented documentary and testimonial evidence on the amount due on the Loan. Zibelman and Rubin testified on behalf of Lawyers Funding and Miller testified on behalf of LG. In addition to the foregoing facts, the following facts pertinent to our review were adduced.

**1.**

Miller testified that he has been the managing member of GFCIB since 2011 and is responsible for funding of loans and servicing of existing loans. Specific to this matter, this entails acting on behalf of LG in servicing the loans, including "administering the loan, collecting payments on a loan, self-

_____

matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment." ***Milshteyn v. Fitness International, LLC***, 271 A.3d 498, 502-03 (Pa. Super. 2022) (citation omitted).

understood, disbursing the payments to L.G., any workouts on a loan [and] any legal matters[, including lawsuits]." (N.T., at 38; ***see id.*** at 37). He stated that he spoke to Rodney Green six months before trial and to Anthony Green "every step of the way as we've gone through the … legal process. … [W]e keep him informed what's going on with it." (***Id.*** at 139-40); (***see id.*** at 90). When asked if he had written permission to proceed with the legal action, Miller responded that "L.G., both Rodney and Tony Green, are well aware of the legal action. Not only aware, they have been paying the bills monthly or whenever we get the bills for the attorneys[.]" (***Id.*** at 93). He testified that GFCIB had not regularly sent a statement to Lawyers Funding since July 2016 because that was not the company's practice, but if one was requested, it was sent. (***See id.*** at 59-61, 67). GFCIB did not present evidence of written notice sent to Lawyers Funding containing the monthly amount needed to clear the late fees or with the principal amount due. (***See id.*** at 69-70, 103, 177).

Over the objection of Lawyers Funding, LG admitted Exhibit P-3. (***See id.*** at 49-50). Miller's testimony explaining the amount Lawyers Funding's default relied on Exhibit P-3, a balance spreadsheet and summary of Lawyers Funding's loan payments which showed when payments were due, the beginning balance, the principal, interest and total amounts due, amounts received and not received, the account's ending balance and interest. (***See id.*** at 51). Miller explained that it reflects payments made from December

2014 and records "zero" in the payment received column for February and September 2016, and September, October and November 2017. (*See id.*); (Exhibit P-3). Exhibit P-3 shows that Lawyers Funding was charged a five percent late fee every month due to missed payments and/or overdue payments from December 2014 through July 2020. (*See* N.T., at 61-62); (Exhibit P-3). He explained that as of July 31, 2020, Exhibit P-3 showed an ending balance of $157,825.30, which consisted of principal, interest and late fees. (*See id.* at 88).

Miller affirmed that the document admitted as Exhibit P-3 was "maintained in the ordinary course of [GFCIB]'s business" and that it was "a regular practice of [GFCIB] to make this account" even though it had been prepared after litigation had started. (N.T., at 50-51). Miller testified that Exhibit P-3 was prepared by a bookkeeper in his office, Holly Cooper. (*See id.* at 99). He was not certain exactly what date it was created but observed that it reflected the loan balance as of July 31, 2020. On cross-examination, when asked whether it was prepared for litigation, he stated he believed so. (*See id.* at 100).

**2.**

Rubin and Zibelman testified on behalf of Lawyers Funding. Lawyers Funding entered Exhibit D-23, the QuickBooks history of checks paid on the Loan in 2017, into evidence. (*See id.* at 169). Exhibit D-23 showed that the beginning balance for 2017 was $76,000.00, which Rubin explained was the

result of missed payments in August and September 2016. (***See id.*** at 186-87); (Exhibit D-23). Exhibit D-23 reflected that Lawyers Funding missed three loan payments in August, September and December of 2017. (***See*** N.T., at 153); (Exhibit D-23). Rubin testified that the Loan balance was $48,000.00 in August 2017 due to payments from January through July and, as of December 2017, the balance was $40,000.00 due to the October and November payments. (***See id.*** at 153-54); (Exhibit D-23).

The trial court found Exhibit D-23 and Rubin's testimony credible. (***See*** Trial Ct. Op., 10/16/20, at ¶¶ 44, 48).

**E.**

On October 16, 2020, the court entered an Assessment of Damages in favor of LG and against Lawyers Funding in the amount of $63,003.50, which included $40,000.00 in principal, plus interest and attorneys' fees. It explained:

> [LG] failed to produce competent, reliable and credible evidence of the loan balance at the time of [Lawyers Funding]'s default. [LG] introduced Plaintiff's Exhibit 3 ("P-3") as evidence of [Lawyer's Funding]'s loan balance. **P-3, an account history of the [Lawyers Funding] loan from December 2014 to present, fails to provide credible evidence of the principal balance at the time of [Lawyers Funding]'s default**[.] …
>
> **Defendants' Exhibit D-23 ("D-23"), on the other hand, is evidence that is credible, reliable and competent** and supported by the testimony of [Lawyers Funding]'s Director of Operations Kenneth Rubin and managing member Alan Zibelman. The court finds that the principal loan balance at the time of default was $40,000. D-23 is a complete payment history that dates to the actual beginning of the lending relationship between [LG] and [Lawyers Funding] that started in 2009. While D-23

- 10 -

does not provide a running balance of the principal due on the loan, it identifies actual dates, check numbers and payments made on the loans. D-23 also shows which checks were negotiated or voided. The court finds D-23 and Rubin's testimony to be persuasive that the principal balance at the time of [Lawyers Funding]'s default is $40,000. Defendants' Exhibit 15 ("D-15") is also persuasive in support of this finding.

Defendants' Exhibit 23 and Rubin's testimony are clear that in 2016 [Lawyers Funding] missed two monthly payments in July 2016 and August 2016. The evidence also shows [Lawyers Funding] missed three monthly payments in 2017 and three more in 2017. Rubin testified that when he prepared [Lawyers Funding]'s 2017 final financial results regarding the [LG] loan, he took into account the two missed payments in 2016 and only counted ten payments made in 2016 to calculate the loan balance in January 2017 to be $76,000. Rubin further testified that in 2017 [Lawyers Funding] made nine timely payments on the loan and missed three. D-15 shows the loan balance of $76,000 and then accounts for the nine payments in 2017 leaving a balance of $40,000. Rubin also testified that no further payments were made on the loan. **Hence, at the time of default the principal balance on the loan was $40,000**.

Based on the [foregoing], the court finds that the principal balance at the time of default was $40,000. The court further finds that Loan Modification #9 which adopts and incorporates the terms and conditions in the original note dated April 2009, supports our finding that that [LG] is entitled to default interest at the rate of 24% per year, late fees on the three missed payments and attorney's fees at 20% of the principal balance at the time of default.

(Trial Ct. Op., 10/16/20, at 6-7) (emphases added; footnotes omitted).

On December 29, 2020, Lawyers Funding filed a post-trial motion seeking to vacate the assessment of damages on the bases that the trial court erred: in granting partial summary judgment on the issue of liability, in entering judgment in favor of LG where the amended servicing agreement expired, in relying on the testimony of Jack Miller, in not permitting the parties

- 11 -

to provide proposed findings of fact and in assessing attorneys' fees and interest. (*See* Trial Court Opinion, 3/02/21, at 4-7). The court denied the motion on March 2, 2021, finding that the issues were either waived or lacked merit. (*See id.*). Lawyers Funding timely appealed and filed a court-ordered statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) opinion on January 19, 2022. *See* Pa.R.A.P. 1925(a).

**II.**

Lawyers Funding raises four issues for our review: (1) the trial court erred or abused its discretion in assessing damages based on an improperly verified affidavit and unauthenticated business records without a hearsay exception; (2) the trial court abused its discretion in assessing damages "where it found … Jack Miller … was unable to produce any competent, reliable, credible or admissible evidence of the loan balance at the time of default;" (3) the trial court erred in granting summary judgment on liability, improperly shifting the burden; and (4) the trial court erred in assessing damages where Jack Miller lacked standing. (*See* Lawyers Funding's Brief, at 17, 28, 30, 32).[4]

---

[4] We rely on the headings of the argument sections to provide Lawyers Fundings issues because they are phrased differently than in the statement of issues.

**A.**

In their first two issues, Lawyers Funding argues that the trial court erred or abused its discretion in assessing damages based on an unauthenticated business record (Exhibit P-3), which showed that it owed $157,825.30, which consisted of principal, interest and late fees. (*See id.* at 88). It argues that this exhibit should not have been admitted because it was prepared in anticipation of litigation, and the court should not have relied on the testimony of Miller in which he failed to produce "any competent, reliable, credible or admissible evidence of the loan balance at the time of default." (*Id.* at 28); (*see id.* at 17-29).[5] Because it should not have been admitted, Lawyers Funding stated that there was no evidence to support a monetary award.

We are a bit nonplussed by this argument. While the exhibit was offered into evidence, the trial court did not use it in calculating the amount of the

---

[5] Our standard of review of this issue is well-settled:

> Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 100-01 (Pa. Super. 2011) (citations and quotation marks omitted).

- 13 -

judgment. Instead, it relied on the amount Lawyer's Funding admitted that it owed—$40,000.00 As explained by the trial court:

> [This] claim of error [is] meritless since the court did not rely on P-3 or Miller's testimony to determine [] the principal balance owed by [Lawyers Funding] at the time of their default.
>
> [L.G.] admitted Exhibit-3 ("P-3") as evidence of [Lawyers Funding]'s loan balance. It is an account history of the [Lawyers Funding] loans from December 14, 2013 to the present. However, P-3 shows that late fees were assessed by [L.G.] automatically, at all times that the loan was in default. This late fee was imposed even when [Lawyers Funding] paid a particular monthly bill on time. Accordingly, the court did not accept P-3 or Jack Miller's testimony as probative evidence on calculation of principal and late fees. Nor were P-3 or Jack Miller probative on whether Loan Modification #9 had incorporated all previous late fees going back to 2009—or whether this was relevant at all. In short, we did not use P-3 or Jack Miller's testimony in finding how much money is legally owed by [Lawyers Funding].

(Trial Court Opinion, 1/19/22, at 7-8); (**see also** Trial Ct. Op., 10/16/20, at 6-7) (declining to rely on Exhibit P-3 and instead relying solely on Defendants' exhibits and the testimony of Rubin).

Accordingly, even if the admission of Exhibit P-3 and Miller's testimony about it was erroneous, Lawyers Funding would be due no relief because it was not prejudiced in any way by the evidence's admission where the trial court did not consider it in making its decision and instead relied on the amount that Lawyer's Funding admitted that was owed, which the trial court properly relied on in finding that amount owed.

**B.**

Lawyers Funding next claims that the trial court erred in granting summary judgment in LG's favor on the issue of liability because Miller's affidavit in support of the motion was defective.[6]

The claims against Lawyers Funding were based on breach of contract for failure to make payments under the Loan agreement. (*See* Complaint in Confession of Judgment, ¶¶ 4-17). To demonstrate a claim for breach of contract, a claimant must establish: (i) the existence of a contract, (ii) defendant's breach of a duty imposed by the contract, and (iii) damages resulting from the breach. *See Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. 2003).

Lawyers Funding argues that the court erred in granting summary judgment on liability because it relied on Miller's invalid supporting affidavit that was not properly verified, failed to attach referenced exhibits and lacked "evidentiary weight."[7] (*See* Lawyers Funding's Brief, at 30-32).

_____

[6] "On appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary." *Milshteyn*, *infra* at 503 (citation omitted). "The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration." *Id.* (citation omitted).

[7] Pursuant to Pennsylvania Rule of Civil Procedure 1035.4:

*(Footnote Continued Next Page)*

Again, Lawyers Funding misstates the trial court's basis for its decision. As stated by the court and as confirmed by our independent review of the record, the trial court entered summary judgment on liability because "[Lawyers Funding]'s own pleadings admit that they were in default and that a sum of $40,000 was due and owing." (Trial Ct. Op., 1/19/22, at 3). Lawyers Funding admitted liability in response to the motion for summary judgment and at every time before and after that, merely disputing the amount owed. (*See*, *e.g.*, Petition to Strike/Open Confessed Judgment, at ¶ 10) ("the amount Defendants … owe is $40,000 plus accrued interest, if any[, which is] substantially lower than the $93,280.28 alleged in the Complaint[.]"); (Response to Motion for Summary Judgment, 11/01/19,n at ¶ 2 (Lawyers Funding "admit[s] signing the Loan Documents and that a balance is due to [LG, but that] the amount due … remains in dispute."); (*see id.* at ¶¶ 5-15, 35-38 (same); (Memorandum of Law in Response to Motion for Summary Judgment, 11/01/19, at 1, 4) (pagination provided) (stating this is a breach

---

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein. Verified or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Pa.R.C.P. 1035.4.

of contract action in which they admit they breached but dispute amount of damages); (Response to Motion for Summary Judgment, 11/04/19, at ¶ 16) ("the evidence clearly establishes that at the end of 2017 [Lawyers Funding] only owed $40,000 and not $89581.03 [plus interest and attorney fees] as [LG] contends.").

It is on this repeated admission by Lawyers Funding that the trial court relied in entering summary judgment on liability, not on the representations made in the affidavit of Miller. (**See** Trial Ct. Op., 3/02/21, at 5) (explaining court granted summary judgment as to liability because Lawyers Funding's "own pleadings admit they were in default and that a sum of $40,000 was due and owing.").

Again, much like in the previous issues, whether Miller's affidavit supporting the motion for summary judgment was properly authenticated or attached the proper documents is irrelevant where the trial court did not rely on it and Lawyers Funding admitted liability. Because there is no genuine issue of material fact on the issue of Lawyers Funding's liability, the trial court properly entered summary judgment on this issue. **See Milshteyn**, **supra** at 502-03.

## C.

Next, Lawyers Funding argues that the trial court erred in assessing damages because Miller (*i.e.,* GFCIB) lacked authority to bring this action on behalf of LG because the servicing agreement between LG and GFCIB had

expired, and Rodney Green did not provide written consent to commence litigation. (*See* Lawyers Funding's Brief, at 32-33).

As properly observed by the trial court, Lawyers Funding waived the standing/lack of authority issue by failing to raise it in its post-trial motion. (*See* Trial Ct. Op., 1/19/22, at 6); (Post-Trial Motion, 10/29/20, at ¶¶ 1-12). It is well-settled that issues not raised in a post-trial motion are waived for appeal. *See Diener Brick Co. v. Mastro Masonry Contractor*, 885 A.2d 1034, 1038 (Pa. Super. 2005) (issues not raised in post-trial motions are waived for purposes of appeal).

> To preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal. Additionally, the law is clear that issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal.

*PCS Chadago v. Torres*, 252 A.3d 1154, 1157-58 (Pa. Super. 2021) (citations and quotation marks omitted); *see also* Pa.R.A.P. 302(a).

Moreover, our independent review of the record reveals that Lawyers Funding never raised the lack of authority issue anywhere below. In fact, Lawyers Funding's counsel stated that Miller was the agent for LG and did not object to his authority to testify on behalf of LG when he was introduced as a witness. (*See* N.T. at 19-20, 36-37). Moreover, Lawyers Funding never raised the issue of lack of authority in the trial court, either in support of its petition to strike/open the confession of judgment or in the hearing before the

trial court on damages. (**See** Petition to Strike/Open, at ¶¶ 1-24); (N.T., at 92-94, 201-05). Hence, it is waived for our review.[8] **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Moreover, we briefly note that it would lack merit.[9]

In its Rule 1925(a) opinion, the trial court explained that despite the waiver, "[s]ince there were no notifications from either party to withdraw from the Agreement and this matter was filed prior to the date of termination (March 2020), the Agreement automatically renewed and did not expire. Accordingly, GFCIB did not lack authority to bring this action." (Trial Ct. Op., 1/19/22, at 7).

We discern no error of law in the trial court's interpretation of the servicing agreement's terms. The amendment provided that the parties wished to extend the term of the servicing agreement from March 1, 2018, until March 1, 2020, and that it would automatically renew upon the expiration

---

[8] Lawyers Funding also waived this issue for failing to provide any argument in the form of legal citation or discussion thereof, merely providing a recitation of the facts. (**See** Lawyers Funding's Brief, at 32-33); Pa.R.A.P. 2101, 2119(a)-(b)).

[9] "Our standard of review regarding contract interpretation is well-settled. Because contract interpretation is a question of law, our standard of review is *de novo,* and the scope of review is plenary." **Ragnar Benson, Inc. v. Hempfield Township Municipal Authority**, 916 A.2d 1183, 1188 (Pa. Super. 2007). Similarly, "[t]hreshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **S.G. v. J.M.G.**, 186 A.3d 995, 997 (Pa. Super. 2018), *appeal denied*, 197 A.3d 1177 (Pa. 2018) (citation omitted).

of the term unless terminated by sixty days written notice. The agreement also stated that it would be renewable upon written agreement of the parties. (*See* Amendment, at ¶¶ 1, 5). The subject default occurred in 2017 and the matter was filed in October 2018, well within the extended term, particularly where it is undisputed that GFCIB was not a party itself, but was merely acting on behalf of LG, which clearly had an interest in the outcome of the litigation.

Furthermore, we note that although mentioned by the trial court in its Rule 1925(a) opinion, the court did not address Lawyers Funding's waived claim that GFCIB lacked standing in this matter because Green did not consent to the litigation in writing pursuant to Paragraphs 8 and 9 of the servicing agreement. However, the April 1, 2018 amendment amended the term "Owner" was to include LG and entities owned by Anthony P. Green, among others. (*See* Amendment, at ¶ 3). Clearly, LG authorized the legal action commenced in October 2018 as Anthony P. Green discussed it with Miller via both phone calls and written texts and he signed checks to pay the associated legal fees, thus ratifying the action. (*See* N.T., at 92-94). Accordingly, for all these reasons, even if not waived, this standing/authorization issue would lack merit where GFCIB had standing to file this action against Lawyers Funding as the servicing agent for LG.

For all the foregoing reasons, we affirm the judgment entered on October 16, 2020.

Judgment affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/8/2022*