J-S29003-21

2022 PA Super 30

| | | |
|---|---|---|
| PETER MILSHTEYN AND MAYA MILSHTEYN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 452 EDA 2021 |
| FITNESS INTERNATIONAL, LLC F/K/A LA FITNESS INTERNATIONAL, LLC D/B/A LA FITNESS, FITNESS & SPORTS CLUBS, LLC  F/K/A FITNESS INTERNATIONAL, LLC AND REALTY INCOME PENNSYLVANIA PROPERTIES TRUST | : | |

Appeal from the Order Entered January 18, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 190501802

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.:                    **FILED FEBRUARY 18, 2022**

Peter Milshteyn and Maya Milshteyn ("the Milshteyns") appeal from the order granting the motions for summary judgment filed by Fitness International, LLC f/k/a LA Fitness International, LLC d/b/a LA Fitness, Fitness & Sports Clubs, LLC f/k/a Fitness International, LLC (collectively,

_____

[*] Former Justice specially assigned to the Superior Court.

"Defendants"), and Realty Income Pennsylvania Properties Trust ("Realty Income"),[1] in this premises liability action. We affirm.

The Milshteyns were members of an L.A. Fitness facility in Philadelphia, Pennsylvania. Relevantly, when they joined the facility in 2011, the Milshteyns executed a Membership Agreement.

On June 11, 2017, the Milshteyns were in the pool area of the L.A. Fitness at the time of a power outage. Peter slipped while descending the stairs from the pool to the locker room in the dark. As a result of his fall, Peter sustained a fracture to his right elbow.

The Milshteyns filed a complaint on May 16, 2019, which included Peter's claim for premises liability – slip and fall, and Maya's claim for loss of consortium. The complaint alleged that L.A. Fitness employees were negligent in, *inter alia*, creating the dangerous condition of "low or no lighting," failing to inspect or repair the area where Peter fell, and failing to warn Peter of the defective condition. Complaint, 5/16/19, at ¶ 22. On June 5, 2019, the Milshteyns filed a praecipe to reinstate the complaint.

---

[1] The Milshteyns named Defendants and Realty Income in the complaint. Following a successful summary judgment motion, the trial court entered judgment in favor of Realty Income, as there was no dispute that Realty Income was a landlord out of possession, and thus, did not owe the Milshteyns a duty of care. The Milshteyns do not challenge the order granting summary judgment to Realty Income, and Realty Income is not a party to the instant appeal.

Defendants filed an answer and new matter. Specifically, Defendants asserted, *inter alia*, that the Milshteyns' claims were barred by the terms of their Membership Agreement. ***See*** Answer and New Matter, 6/18/19, New Matter at ¶ 15.[2]

On November 2, 2020, Defendants filed a motion for summary judgment, again asserting, *inter alia*, that the Milshteyns' Membership Agreement precluded their claims. ***See*** Motion for Summary Judgment, 11/2/20, at ¶¶ 15-26. Defendants attached a copy of the Membership Agreement, which includes, in relevant part, the following language:

> **IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY.** You hereby acknowledge and agree that use by Member … of L.A. Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and **Member assumes full responsibility for such risks.** In consideration of Member … being permitted to enter any facility of L.A. Fitness (a "Club") for any purpose including, but not limited to, observation, use of facilities, services or equipment, or participation in any way, Member agrees to the following: **Member hereby releases and holds L.A. Fitness, its directors, officers, employees, and agents harmless from all liability to Member** … **for any loss or damages, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by active or passive negligence of L.A. Fitness or otherwise**, to the fullest extent permitted by law, while Member … [is] in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment. Member also hereby agrees to indemnify L.A. Fitness from any loss,

---

[2] Defendants also filed a cross-claim for indemnification against Simon Property Group and Franklin Mills Associates, LP a/k/a Franklin Mills Mall. Ultimately, the parties stipulated to the dismissal of Simon Property Group and Franklin Mills Associates.

liability, damage or cost L.A. Fitness may incur due to the presence of Member … in, upon or about the L.A. Fitness premises or in any way observing or using any facilities or equipment of L.A. Fitness whether caused by the negligence of Member(s) or otherwise. You represent (a) that Member … [is] in good physical condition and ha[s] no disability, illness, or other condition that could prevent Member(s) from exercising without injury or impairment of health, and (b) that Member has consulted a physician concerning an exercise program that will not risk injury to Member or impairment of Member's health. Such risk of injury includes (but is not limited to): injuries arising from use by Member or others of exercise equipment and machines; injuries arising from participation by Member or others in supervised or unsupervised activities at a Club; injuries and medical disorders arising from exercising at a Club such as heart attacks, strokes, heat stress, sprains, broken bones and torn muscles and ligaments, among others; and **accidental injuries occurring anywhere in Club dressing rooms, shower and other facilities**. Member further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the State of Pennsylvania and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. Member has read this release and waiver of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from this Agreement have been made.

*Id.*, Exhibit E (Membership Agreement) at 2 (emphasis added). Additionally, the line immediately preceding Peter's signature reads, "By signing this Agreement, Buyer acknowledges that Buyer is of legal age, has received a filled-in and completed copy of this Agreement[,] has read and understands the entire agreement including … the Release and Waiver of Liability…." *Id.* at 1.

In response, the Milshteyns averred that there was a genuine issue of material fact "regarding whether [Peter], who speaks and understands only

basic English, understood the nature of the Membership Agreement." Opposition to Motion for Summary Judgment, 12/1/20, at ¶ 8; **see also id.**, at ¶¶ 13-16, 19. The Milshteyns also argued that the Membership Agreement constitutes a contract of adhesion, which is unconscionable, and therefore unenforceable. **See id.**, at ¶¶ 18-22. Additionally, the Milshteyns' claim that Defendants' conduct was grossly negligent, and that the Membership Agreement does not apply to such conduct. **See id.**, at ¶¶ 23-26.

The trial court conducted a hearing on Defendants' motion for summary judgment on January 12, 2021. By an order dated January 13, 2021,[3] the trial court granted Defendants' motion for summary judgment. Specifically, regarding Fitness & Sports Clubs, the trial court concluded that the release contained in the Membership Agreement foreclosed the Milshteyns' claims; the Milshteyns did not establish that the Membership Agreement was a contract of adhesion; and the Milshteyns could not raise a gross negligence claim for the first time in response to Defendants' summary judgment motion, effectively amending their complaint after the statute of limitations had run. **See** Order, 1/13/21, at 1-2 (unnumbered). Regarding Fitness International, LLC, the trial court granted summary judgment based on undisputed evidence that "Fitness International, LLC[,] did not own, control, possess, maintain, or

---

[3] The order was entered on the docket on January 18, 2021.

manage the [L.A.] Fitness facility where [Peter's] accident occurred at any relevant time." *Id.* at 3 (unnumbered).

The Milshteyns filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.[4]

On appeal, the Milshteyns raise the following issues for our review:

I. Did the trial court abuse its discretion and/or err as a matter of law when it held there was no genuine issue of material fact as to whether the Membership Agreement signed by [] Peter Milshteyn[] was a contract of adhesion?

II. Did the trial court abuse its discretion and/or err as a matter of law when it held that a claim for gross negligence is a separate cause of action under Pennsylvania law and, therefore, [the Milshteyns] were required to plead gross negligence in their complaint?

_____

[4] Following this appeal, Defendants twice filed applications to quash or dismiss the appeal based upon the Milshteyns' failure to timely comply with the appellate briefing schedule. This Court dismissed both applications, without prejudice to Defendants' ability to raise the issue in their appellate brief.

Defendants have renewed their request for dismissal or quashal of the instant appeal pursuant to Pa.R.A.P. 2188, which provides that, "[i]f an appellant fails to file his designation of reproduced record, brief or any required reproduced record within the time prescribed by these rules, or within the time as extended, an appellee may move for dismissal of the matter." Pa.R.A.P. 2188. This Court has discretion to quash or dismiss an appeal if procedural defects are substantial. *See* Pa.R.A.P. 2101.

Here, the Milshteyns requested, and were granted, several extensions of time to comply with the briefing schedule. The most recent extension order directed the Milshteyns to file their appellate brief by July 12, 2021. The Milshteyns filed their brief the following day, July 13, 2021. Defendants have failed to demonstrate that the delay prejudiced them, or otherwise impedes our review of this case. Accordingly, we decline to dismiss or quash the Milshteyns' appeal on this basis.

III. Did the trial court abuse its discretion and/or err as a matter of law when it held that a claim for gross negligence is a separate cause of action under Pennsylvania law[,] and [the Milshteyns] were precluded from amending their complaint to assert a claim for gross negligence by the expiration of the statute of limitations applicable to negligence actions?

IV. Did [] Fitness & Sports Clubs, LLC, engage in grossly negligent conduct requiring reversal of the granting of summary judgment?

Appellants' Brief at 10 (some capitalization omitted).

Our review of an order granting summary judgment entails reviewing the evidence of record to determine if there is a triable issue of fact:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

> On appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Weible v. Allied Signal, Inc.*, 963 A.2d 521, 525 (Pa. Super. 2008) (citation and brackets omitted).

The Milshteyns first claim the trial court erred in determining that the Membership Agreement is not a contract of adhesion. *See* Appellants' Brief at 13. The Milshteyns argue that the waiver of liability provision in the Membership Agreement "overwhelmingly and unreasonably favors" Defendants by shielding Defendants from liability. *Id.* at 16-17. According to the Milshteyns, Peter was incapable of negotiating the terms of the Membership Agreement and could not reject the waiver of liability provision without rejecting the entire transaction. *See id.* at 17.

Exculpatory provisions in contracts are generally enforceable if they are clear and meet three other conditions:

> It is generally accepted that an exculpatory clause is valid where three conditions are met. First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. …[O]nce an exculpatory clause is determined to be valid, it will, nevertheless, still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. In interpreting such clauses we listed as guiding standards that: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

*Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189 (Pa. 2010) (internal citations omitted).

In *Toro v. Fitness Int'l LLC*, 150 A.3d 968 (Pa. Super. 2016), this Court addressed the same exculpatory provision in an L.A. Fitness Membership Agreement and concluded that the provision was enforceable. *See id.* at 972. Toro was a member of an L.A. Fitness facility, and his Membership Agreement contained a "release and waiver of liability and indemnity" nearly identical to the provision in the contract signed by Peter. *Id.* at 970. Toro filed a negligence action after he slipped and fell on the wet floor of a locker room in the facility. *See id.* at 970-71. The facility filed a motion for summary judgment based, in part, on the terms of the waiver provision. *See id.* at 970. The trial court entered judgment in favor of the facility. *See id.*

On appeal, this Court concluded that the trial court had properly granted summary judgment in favor of the facility based on the waiver provision. *See id.* at 972. First, this Court concluded that the relevant provision was not against public policy, as "Toro was engaged in a voluntary athletic or recreational activity: going to the gym." *Id.* at 974; *see also id.* at 973 (stating that "[e]xculpatory provisions violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest … include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." (citation and quotation marks omitted)). Additionally, this Court rejected Toro's contention that the Membership

Agreement was a contract of adhesion, explaining that "an exculpatory agreement involving use of a commercial facility for voluntary athletic or recreational activities is not considered a contract of adhesion because the signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services…." *Id.* at 975 (citation, quotation marks and brackets omitted).

Here, the trial court, relying on *Toro*, concluded the Membership Agreement was not unconscionable or a contract of adhesion. *See* Trial Court Opinion, 4/12/21, at 7-10. The record confirms the Milshteyns executed the Membership Agreement for the purpose of participating in a voluntary athletic activity, and they were under no compulsion to complete an agreement for this non-essential service. *See Toro*, 150 A.3d at 974-75; *see also Chepkevich*, 2 A.3d at 1191 (concluding that the release from liability signed by the plaintiff when she purchased a ski pass was not unconscionable, stating that "[t]he signer is a free agent who can simply walk away without signing the release and participating in the activity…."). Additionally, in signing the Membership Agreement, Peter acknowledged he had read and understood the agreement, including the exculpatory provision. *See* Motion for Summary Judgment, 11/2/20, Exhibit E (Membership Agreement), at 1.[5] Accordingly,

---

[5] On appeal, the Milshteyns have abandoned their argument that Peter did not understand the terms of the Membership Agreement due to his difficulty understanding English. Nevertheless, the trial court noted that Peter did not

*(Footnote Continued Next Page)*

J-S29003-21

the trial court properly granted summary judgment in favor of Defendants on this basis.

We address the Milshteyns' remaining claims together.[6] The Milshteyns assert that the trial court erred in concluding that a claim for gross negligence is a separate cause of action, which Appellants were required to plead in their complaint. **See** Appellants' Brief at 18. The Milshteyns contend that Pennsylvania courts recognize differing standards of care, rather than separate causes of action for degrees of negligence. **See id.** at 19. The Milshteyns therefore argue that they were not required to separately plead a claim for gross negligence in their complaint to present evidence of such at trial. **See id.** at 20.

_____

ask his wife to help him translate the document and determined that "the language difficulties presented by [the Milshteyns] … are not legally material for determining whether the Membership Agreement is enforceable…." Trial Court Opinion, 4/12/21, at 9-10; **see also Toro**, 150 A.3d at 976 (stating that, where the plaintiff signed a Membership Agreement that included an express acknowledgement that he read and understood the agreement, plaintiff was bound by the terms of the agreement); **Hinkal v. Pardoe**, 133 A.3d 738, 743 (Pa. Super. 2016) (stating that "[o]ne who is about to sign a contract has a duty to read that contract first.").

[6] The Milshteyns do not separately address their fourth claim in the argument section of their appellate brief. **See** Pa.R.A.P. 2119(a) (providing that an appellant's "argument shall be divided into as many parts as there are questions to be argued").

- 11 -

Further, the Milshteyns argue that a jury could reasonably conclude that Fitness & Sports Clubs[7] engaged in grossly negligent conduct. ***See id.*** at 20. The Milshteyns contend that Fitness & Sports Clubs' conduct could be deemed grossly negligent because Fitness & Sports Clubs allowed Peter, unattended, to descend the steps leading from the pool area to the locker room, despite the clear dangers associated with a dark, and potentially wet, staircase. ***See id.*** at 23-24.

We conclude the trial court did not err. After the statute of limitations on a claim has run, a claim cannot be added to a complaint if it is wholly distinct from the claims originally in the complaint. ***See Aetna Cas. & Sur. Co. v. Roe***, 650 A.2d 94, 103 (Pa. Super. 1994). "In determining whether a wholly different cause of action is introduced by [an] amendment, technical considerations or ancient formulae are not controlling[.]" ***Id.*** (citation omitted). The polestar of the analysis is whether the defendant is improperly prejudiced by the proposed addition. ***See id.***

One way a defendant can be improperly prejudiced is if the proposed addition is not subject to the same defenses as the original claim. ***See id.*** Here, it is precisely because a claim for "gross negligence" is not barred by the Membership Agreement that the Milshteyns seek to add it to the

_____

[7] The Milshteyns concede that Fitness International, LLC, did not control the premises at the time of Peter's accident, and therefore restrict their argument to the entry of summary judgment in favor of Fitness & Sports Clubs. ***See*** Appellants' Brief at 8 n.1.

complaint. According to the terms of the Membership Agreement, Fitness & Sports Clubs cannot be held liable for injuries to patrons arising from its own negligent conduct. **See** Motion for Summary Judgment, 11/2/20, Exhibit E (Membership Agreement), at 2. However, the Membership Agreement does not preclude liability for injuries arising from grossly negligent conduct. **See generally Feleccia v. Lackawanna Coll.**, 215 A.3d 3, 21 (Pa. 2019) (holding that "the same policy concerns that prohibit the application of a waiver in cases of recklessness—*i.e.*, allowing it would incentivize conduct that jeopardizes the signer's health, safety and welfare to an unacceptable degree[,] requires a similar holding with regard to gross negligence"). As a result, this circumstance weighs in favor of categorizing their claim for gross negligence as a wholly new cause of action.

Another circumstance that weighs in favor of treating a claim as a wholly new cause of action is when "the amendment proposes … a different kind of negligence than the one previously raised[.]" **Aetna**, 650 A.2d at 103. "Gross negligence" is substantively different from ordinary negligence. **See Kibler v. Blue Knob Rec., Inc.**, 184 A.3d 974, 984-85 (Pa. Super. 2018).

However, the Milshteyns contend that caselaw has established "gross negligence" as merely a different degree of negligence and not a different cause of action. We conclude their argument misinterprets the cited cases. For example, the Milshteyns cite to **Ferrick Excavating & Grading Co. v. Senger Trucking Co.** for the proposition that gross negligence is merely a

differing standard of care and not a distinct cause of action. **See id.**, 484 A.2d 744, 749 (Pa. 1984). However, even **Ferrick** acknowledged gross negligence is a distinct standard of care from ordinary negligence. **See id.**, at 749. Nor does **In re Scheidmantel** support the Milshteyns' position. **See id.**, 868 A2d 464 (Pa. Super. 2005). In **Scheidmantel**, this Court, after acknowledging the lack of precision in the term "gross negligence," observed that "when courts have considered the concept … in various civil contexts, they have concluded uniformly that there is a substantive difference between 'ordinary negligence' and 'gross negligence.'" **See id.**, at 485.

The Milshteyns' remaining citations are to Third Circuit and Eastern District of Pennsylvania decisions. **See**, **e.g.**, **Fialkowski v. Greenwich Home for Children, Inc.**, 921 F.2d 459 (3d Cir. 1990). Even if we agreed with their interpretations of these cases, which we explicitly do not, we note that they do not constitute binding precedent. **See Kleban v. Nat'l Union Fire Ins. Co. of Pittsburgh**, 771 A.2d 39, 43 (Pa. Super. 2001) (noting that federal court decisions, other than U.S. Supreme Court decisions, are not binding upon this Court).

Under these circumstances, we conclude that the Milshteyns' claim for gross negligence constituted a wholly distinct claim from the claims originally presented in their complaint. We therefore can find no error in the trial court's order granting summary judgment.

Based upon the foregoing, we affirm the trial court's order granting summary judgment in favor of Defendants.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2022