J-S25002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| SUSAN MADRAK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BLINK FITNESS, BLINK HOLDINGS, | : | No. 2260 EDA 2022 |
| INC., EQUINOX GROUP, INC., AND | : | |
| JOHN DOE CORPORATION 1-10 | : | |

Appeal from the Order Entered September 1, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  201200809

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                **FILED OCTOBER 30, 2023**

Susan Madrak (Appellant) appeals from the order granting summary judgment in favor of Blink Fitness, Blink Holdings, Inc., Equinox Group, Inc., and John Doe Corporations 1-10 (collectively, Appellees).  Appellant argues that the trial court erred or abused its discretion in granting summary judgment because the exculpatory clause in the membership agreement (the Agreement) was invalid and did not bar recovery.  After review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

On September 27, 2018, at a kiosk inside the Blink Fitness gym located at 5597 Tulip Street Building C 1-4, Philadelphia, Pennsylvania 19124, [Appellant] entered into a contract with [Appellees].  First, at the kiosk, [Appellant] selected a gray membership.  [Appellant] then submitted into the kiosk information such as her first name, last name, and address.  Next,

[Appellant] slid her credit card into the kiosk. The kiosk camera then photographed [Appellant]. Next, [Appellant] verified her membership plan, membership information, payment information, and photograph on the kiosk's review screen. On that review screen also appeared a terms and condition button which presented a clickable link to the full text of the terms and conditions of the Membership Agreement. Next to that button was a vacate check-mark box stating: "I have read and agree to the terms and conditions." [Appellant] check-marked that box. By check-marking that box, [Appellant] indicated that she had "READ [THE MEMBERSHIP] AGREEMENT IN FULL." [Appellant's] digital signature then appeared, among other locations in the Membership Agreement, immediately following the exculpatory clause. By digitally signing there, [Appellant] "confirmed her understanding [of the exculpatory clause]."

At the next kiosk screen, [Appellant] scanned her Blink membership card. Lastly, [Appellant] saw the final "Thank You" kiosk screen indicating the creation of her membership. [Appellees] then emailed a welcome email to [Appellant] containing a link to her signed Membership Agreement.

The exculpatory clause of the Membership Agreement stated:

> WAIVER OF LIABILITY; ASSUMPTION OF RISK: Member acknowledges that the use of the Club, its facilities, equipment, services and programs involves an inherent risk of personal injury to Member (including, without limitation, heart attacks, strokes, heat stress, broken bones, torn or damaged muscles, ligaments, or tendons, or even death). **Member voluntarily agrees to assume all risks of personal injury to Member, and waives any and all claims or actions that Member may have against Blink, any of its subsidiaries or other affiliates** and any of their respective officers, directors, employees, agents, successors, and assigns **for any such personal injury, including, without limitation** (i) **injuries arising from the use of any exercise equipment or exercise machines**, (ii) injuries arising from participation in supervised or unsupervised activities and programs (including, without limitation, participation in a personal training session or group fitness class) in any area of the Club, **(iii) injuries** or medical disorders **resulting from exercising at the Club; and (iv) any other accidental injuries sustained within the Club**. Furthermore,

- 2 -

> Member agrees to indemnify, defend, and hold harmless Blink from any and all liability, damages, losses, suits, demands, causes of action, or other claims of any nature whatsoever, to the extent any of the foregoing arise out of or relate in any way to Member's use of the Club, its facilities, equipment, services and/or programs.
>
> Membership Agreement (emphasis added).
>
> [Appellant] alleged that on January 2, 2019, the malfunction of a rowing machine at that Blink Fitness gym caused [Appellant] to fall and sustain injures. On December 15, 2020, [Appellant] filed a Complaint against [Appellees] alleging negligence. Thereafter, on December 16, 2020, the trial court scheduled the case to have an arbitration hearing.
>
> On April 6, 2021, [Appellant] filed her First Amended Complaint against [Appellees] alleging negligence. On August 25, 2021, [Appellees] filed Answers to [Appellant's] First Amended Complaint.
>
> The arbitration hearing was re-scheduled to June 9, 2022. On May 3, 2022, [Appellees] filed a Miscellaneous Application requesting permission from the trial court to file motions for summary judgment within 45 days of the arbitration hearing date, which the trial court granted on May 2, 2022, and permitted [Appellees] to file motions for summary judgment no later than May 5, 2022. On May 4, 2022, [after the close of discovery, Appellees] filed motions for summary judgment, which the trial court granted on September 1, 2022.

Trial Ct. Op., 2/21/23, at 1-3 (citations omitted and some formatting altered).

The trial court concluded that Appellees were entitled to summary judgment because the exculpatory clause in the Agreement was valid and enforceable, and the exculpatory clause barred Appellant's claims against Appellees. *See id.* at 12.

Appellant filed a timely appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925. On appeal, Appellant raises three issues, which we have renumbered as follows:

1. Was the Agreement invalid as a matter of law?

2. Did the conduct of [Appellant] constitute "use" under the terms of the Agreement?

3. Did the trial court err in granting summary judgment?

Appellant's Brief at 2 (renumbered and formatting altered).

Our standard of review of an order granting or denying summary judgment is as follows:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Matos v. Geisinger Med. Ctr.**, 291 A.3d 899, 904 (Pa. Super. 2023) (citation omitted and formatting altered), *appeal granted*, --- A.3d ---, Nos. 192 MAL 2023, 193 MAL 2023, 2023 WL 6531124 (Pa. filed Oct. 6, 2023).

**Validity of Agreement**

In her first issue, Appellant argues that the Agreement was invalid as a matter of law. Appellant's Brief at 12. Appellant contends that the Agreement

was unconscionable, and it constituted a contract of adhesion as she had no choice but to sign the Agreement. *Id.* at 12-13.

Appellees respond that the trial court correctly concluded that the Agreement was a valid contract with an enforceable exculpatory clause, and the Agreement was not a contract of adhesion. Appellees' Brief at 15-16. Further, Appellees contend that the contract was not unconscionable. *Id.* at 17.

The interpretation of a contract is a question of law, and our standard of review is plenary. *Riverview Carpet & Flooring, Inc. v. Presbyterian Senior Care*, 299 A.3d 937, 983 (Pa. Super. 2023).

> [Further, w]hen interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.
>
> When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used.
>
> On the contrary, the terms of a contract are ambiguous if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense. Additionally, we will determine that the language is ambiguous if the language is obscure in meaning through

indefiniteness of expression or has a double meaning. Where the language of the contract is ambiguous, the provision is to be construed against the drafter.

*Id.* at 983-84 (citation omitted and some formatting altered).

In general, exculpatory clauses are valid if they satisfy the following criteria: (1) the clause must not contravene public policy; (2) the agreement must be between persons relating entirely to their own private affairs; and (3) each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. *Milshteyn v. Fitness Int'l, LLC*, 271 A.3d 498, 503 (Pa. Super. 2022). "[E]xculpatory provisions violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." *Vinson v. Fitness & Sports Clubs, LLC*, 187 A.3d 253, 257 (Pa. Super. 2018) (citation and quotation marks omitted).

> Our Supreme Court has set a high bar that a party must clear before a court may invalidate a contract on public policy grounds:
>
> > It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Id.* (quoting *Williams v. GEICO Gov't Employees Ins. Co.*, 32 A.3d 1195, 1200 (Pa. 2011)).

> Whether a contract is unconscionable is a matter of law. This Court has explained that unconscionability is a defensive contractual remedy that relieves a party from an unfair contract

or an unfair portion of a contract. Further, in general, unconscionability has been recognized to include an absence of a meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party. Unconscionability does nothing more than reaffirm the most basic tenet of the law of contracts—that parties must be free to choose the terms to which they will be bound.

**Centric Bank v. Sciore**, 263 A.3d 31, 39 (Pa. Super. 2021) (citations omitted and formatting altered). Moreover, a contract of adhesion is typically a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms." **Chepkevich v. Hidden Valley Resort, L.P.**, 2 A.3d 1174, 1190 (Pa. 2010) (quoting BLACK'S LAW DICTIONARY 342 (8th Ed. 2004)).

However, "an exculpatory agreement involving use of a commercial facility for voluntary athletic or recreational activities **is not considered a contract of adhesion** because the signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services[.]" **Milshteyn**, 271 A.3d at 504 (quoting **Toro v. Fitness Int'l LLC**, 150 A.3d 968, 975 (Pa. Super. 2016)) (emphasis added).

Here, the trial court addressed Appellant's challenge to the validity of the agreement as follows:

In **Vinson**[,] the Superior Court affirmed the trial court's order granting summary judgment against a plaintiff and in favor of a gym. In that case, a plaintiff had tripped on a wet floor mat at the gym, fell, and injured herself. She later filed a complaint against the gym. The trial court granted the gym's motion for

- 7 -

summary judgment because the exculpatory clause in the membership agreement with the plaintiff precluded the plaintiff's claims against the gym. The Superior Court affirmed the trial court's order because the exculpatory clause was valid. It did not violate public policy as it governed a private individual's use of a facility for a recreational activity which the Superior Court affirmed is not a matter of public or state interest.

Here, the trial court properly found that the exculpatory clause did not violate public policy. Following **Vinson** and **Toro**, the trial court properly found that [Appellant's] use of [Appellees'] facilities for the athletic or recreational activity of exercising at the gym with equipment was entirely a private affair between [Appellant] and [Appellees]. Since the Superior Court has repeatedly found such activity not to be a matter of public or state interest, the trial court properly found that the exculpatory clause did not violate public policy.

\* \* \*

Pennsylvania law considers exercising at a gym with equipment a **voluntary** athletic or recreational activity. **Hinkal v. Pardoe**, 133 A.3d 738, 742 ([Pa. Super.] 2016) [(*en banc*)] (emphasis added). Therefore, Pennsylvania law generally considers contracts containing exculpatory clauses governing the use of commercial facilities for voluntary athletic and recreational activities (even inherently dangerous recreational activities) not contracts of adhesion. **Chepkevich**[,] 2 A.3d [at] 1190. This is because (1) the signer is under no compulsion, economic or otherwise, to participate in the activity much less sign the agreement since the agreement relates to non-essential services; and (2) the signer is free to refuse to sign or participate. [**Id.**]; **Milshteyn**[,] 271 A.3d [at] 504[.]

In **Milshteyn**[,] the Superior Court affirmed a trial court's order granting summary judgment against a plaintiff and in favor of [the defendant gym]. In that case, a plaintiff had slipped, [fallen], and injured himself on the stairs leading from the pool to the locker room during a power outage when the stairwell was dark at the gym. He later filed a complaint against the [defendant gym]. The trial court granted the . . . motion for summary judgment because the exculpatory clause in the membership agreement with the plaintiff precluded the plaintiff's claims against the [defendant gym]. The Superior Court affirmed the trial court's order because the exculpatory clause was valid. The Superior Court found that

- 8 -

it was not part of a contract of adhesion because (1) using a commercial facility for a voluntary athletic or recreational activity such as exercising at the gym with equipment was a non-essential service; and (2) the plaintiff was under no compulsion, economic or otherwise, to sign the membership agreement and/or participate in that voluntary athletic or recreational activity at that facility.

Here, like in **Milshteyn** and **Toro**, the trial court properly found that [the] Agreement was not a contract of adhesion. [The] Agreement] governed a non-essential service, namely [Appellant's] use of [Appellees'] commercial facility for voluntary athletic and recreational activity (*i.e.* exercising at the gym). Additionally, [Appellant] was under no compulsion, economic or otherwise, to sign the . . . Agreement and/or participate in that voluntary athletic and recreational activity at that facility. [Appellant] specifically testified that no one forced her to become a member of this gym. [Appellant] was free to become a member of [Appellees'] gym or a member of another gym if [Appellant] wished. As such, the trial court properly found that [the] Agreement was not a contract of adhesion.

\* \* \*

[The **Milshteyn** Court also] found that a gym's exculpatory clause was not unconscionable because (1) using a commercial facility for athletic or recreational activity such as exercising at the gym with equipment was a non-essential service; and (2) the plaintiff was under no compulsion, economic or otherwise, to sign the membership agreement and/or participate in that voluntary athletic or recreational activity at that facility.

Here, like in **Milshteyn**, the trial court properly found that the exculpatory clause in [the] Agreement was not unconscionable. The exculpatory clause was not unconscionable because (1) using a commercial facility for athletic or recreational activity such as exercising at the gym with equipment was a non-essential service; and (2) [Appellant] was under no compulsion, economic or otherwise, to sign [the] Agreement and/or participate in that voluntary athletic or recreational activity at [Appellees'] facility. [Appellant] specifically testified that no one forced her to become a member of this gym. [Appellant] was free to become a member of [Appellees'] gym or a member of another gym if [Appellant] wished. . . .

Trial Ct. Op., 2/21/23, at 7-12 (some citations omitted and formatting altered).

After review, we discern no error of law in the trial court's conclusion that the Agreement did not violate public policy, did not constitute a contract of adhesion, and was not unconscionable. *See Milshteyn*, 271 A.3d at 504; *Centric Bank*, 263 A.3d at 39; *Vinson*, 187 A.3d at 257. Appellees' gym provided a non-essential service, and Appellant's membership and use of Appellees' gym was a voluntary and recreational activity. *See Chepkevich*, 2 A.3d at 1190; *Milshteyn*, 271 A.3d at 504; *Toro*, 150 A.3d at 975. On this record, we agree with the trial court's conclusion that Appellant was under no compulsion to join Appellees' gym, and that she was free to join Appellees' gym or any other gym, which she admitted in her deposition testimony. Trial Ct. Op., 2/21/23, at 10-12 (citing Appellant's Dep., 3/14/22, at 34); *see also Milshteyn*, 271 A.3d at 504. Accordingly, Appellant is not entitled to relief on this claim.

**Bar to Recovery**

In her second issue, Appellant argues that the trial court erred in concluding that she was not entitled to recovery for her injuries under the Agreement. In support, Appellant argues that although the Agreement barred relief from injuries involving the "use" of Appellees' gym equipment, Appellant was not "using" the equipment at the time she was injured because the rowing

machine she used was broken. **See** Appellant's Brief at 10-11.[1] Specifically, Appellant asserts that "it is difficult to see how sitting on a piece of broken equipment and having it tip over due to the fact that it was not welded is considered 'use'" and that "the injuries did not result from exercise, they resulted from a defective machine." **Id.** at 11. Therefore, Appellant argues that her claims are not barred by the exculpatory clause in the Agreement. **See id.** at 10-12.

Appellees respond that Appellant's argument is meritless, as the record reflects that Appellant repeatedly stated that she was "using" the machine when she was injured. Appellees' Brief at 13 (citing Appellant's Am. Compl.; Appellant's Mem. of Law in Response to Appellees' Mot. for Summ. Jud.). Moreover, Appellees note that contract interpretation is a question of law,[2] and the trial court correctly concluded that, as a matter of law, Appellant was using the rowing machine when she was injured, and therefore her claimed injuries are barred by the exculpatory clause in the Agreement. **See id.** at

---

[1] In her Rule 1925(b) statement, Appellant did not assert that the term "use" or any other portion of the Agreement were ambiguous. Accordingly, Appellant waived any claim concerning ambiguity for failing to raise it in her Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that any issue not included in a Rule 1925(b) statement will be deemed waived on appeal); **see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (stating that an appellant's failure to include an issue in a Rule 1925(b) statement results in waiver).

[2] We reiterate that Appellant has not claimed that any terms of the Agreement were ambiguous.

14. Further, the exculpatory clause includes injuries "arising from the use of **any** exercise equipment or exercise machines," and it "does not distinguish between broken or unbroken exercise machines, and [it] encompasses the use of any exercise machines." *Id.* (emphasis in original).

> The trial court addressed this issue as follows:
>
> Here, the trial court properly found that the term "use" in subsection (i) of the exculpatory clause as well as other subsections in [the] Agreement covered the cause of [Appellant's] injury. In particular, the following sections of the exculpatory clause applied:
>
>> Member voluntarily agrees to assume all risks of personal injury to Member, and waives any and all claims or actions that Member may have against Blink, any of its subsidiaries or other affiliates . . . for any such personal injury, including, without limitation (i) injuries arising from the use of **any** exercise equipment or exercise machines, . . . (iii) injuries . . . resulting from exercising at the Club; and (iv) any other accidental injuries sustained within the Club.
>
> Membership Agreement (emphasis added).
>
> [Appellant] argues that the term "use" in subsection (i) of the exculpatory clause does not cover [Appellant's] injury because the cause of [Appellant's] injury was not [Appellant's] use of an unbroken and intact rowing machine, but a broken rowing machine. The exculpatory clause, however, makes no distinction between the use of an unbroken and intact exercise machine and a broken exercise machine. Subsection (i) of the exculpatory clause states " the use of **any** . . . exercise machines." Membership Agreement (emphasis added).
>
> As such, the trial court properly found the term "use" in subsection (i) of the exculpatory clause as well as other subsections in [the] Agreement covered the cause of [Appellant's] injury.

Trial Ct. Op., 2/21/23, at 5-6.

The Agreement expressly provides that Appellant waived damages for "injuries arising from **the use of any exercise equipment or exercise machines**, . . . injuries . . . resulting from exercising at the Club; and . . . **any other accidental injuries** sustained within the Club." Agreement, 8/24/17, at 4 (emphases added). Appellant alleged that "[o]n or about January 2, 2019, [she] **used a rowing machine** located at [Appellees'] gym. Appellant's Am. Compl., 4/6/21, at ¶10 (emphasis added). Additionally, the record further reflects that in her response to Appellees' motion for summary judgment, Appellant stated that she "went to the gym on January 2, 2019. She checked in, then went to **use** a rowing machine. Seeing one open, **she sat on it, and began rowing**. Without warning, the machine fell over, causing her to fall to the ground." Appellant's Mem. of Law in Response to Appellees' Mot. for Summ. Jud., 6/3/22, at ¶III (emphases added). By her own declaration, Appellant was engaged in the "use" of the machine in Appellees' gym when she sustained an injury. Accordingly, we agree with the trial court's conclusion that Appellant's injury arose while she was using Appellees' equipment and that the clear terms of the Agreement precluded recovery. *See Riverview Carpet & Flooring, Inc.*, 299 A.3d at 983-84; *Milshteyn*, 271 A.3d at 504.

### Reckless Conduct

In her third issue, Appellant argues that the trial court erred in granting summary judgment because, although the Agreement released Appellees from claims of ordinary negligence, it was against public policy for the

Agreement to bar recovery from injuries caused by Appellees' recklessness. Appellant's Brief at 8-10.

Appellees respond that Appellant waived this claim because she failed to include it in her Rule 1925(b) statement or raise it in her response in opposition to Appellees' motion for summary judgment. Appellees' Brief at 9, 10-11.

Here, the record confirms that Appellant failed to include this issue in her Rule 1925(b) statement.[3] *See* Appellant's Rule 1925(b) Statement, 10/17/22. Accordingly, Appellant waived this issue. *See* Pa.R.A.P. 1925(b)(4)(vii); *Greater Erie Indus. Dev. Corp.*, 88 A.3d at 224. In any event, even if Appellant had included the claim concerning recklessness in the Rule 1925(b) statement, we would agree with Appellees that Appellant waived the issue by failing to include it in her response to Appellees' motion for summary judgment. Our review confirms that although Appellant alleged recklessness in her amended complaint, she did not raise it in her Pa.R.C.P. 1035.3 response to Appellees' motion for summary judgment. *See McHugh*

---

[3] To the extent that Appellant alleges on appeal that her injuries may have been caused by Appellees' gross negligence, we conclude that claim is waived because Appellant did not plead gross negligence in the amended complaint. *See* Pa.R.A.P. 302(a) (stating "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *Milshteyn*, 271 A.3d at 505 (providing that where an exculpatory clause bars claims for negligence, gross negligence is a distinct cause of action from negligence that must be pleaded separately); *see also Monroe v. CBH20, LP*, 286 A.3d 785, 799 n.5 (Pa. Super. 2022) (*en banc*) (explaining that pleading a claim of negligence does not include the separate claim of gross negligence).

- 14 -

***v. Proctor & Gamble***, 875 A.2d 1148, 1151 (Pa. Super. 2005) (explaining that the failure to raise an argument in opposition to a motion for summary judgment waives that claim, and it may not be raised for the first time on appeal); ***see also*** Pa.R.C.P. 1035.3(a) (providing that when a motion for summary judgment is filed, the responding party may not rest upon the allegations or denials in the pleadings).

On this record, for the reasons set forth herein, we discern no error of law nor abuse of discretion in the trial court's decision granting Appellees' motion for summary judgment. ***See Matos***, 291 A.3d at 904. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2023